# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CRIMINAL ACTION NO. 3:12-CR-120-CHB

**MARVIN DUANE MONK,**                                      **Movant/Defendant.**

**v.**

**UNITED STATES OF AMERICA,**                              **Respondent/Plaintiff,**

## REPORT AND RECCOMENDATION

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") filed by Movant/Defendant Marvin Duane Monk ("Monk"). (DN 64.) The United States filed a response in opposition, and Monk filed a reply. (DNs 79, 81.) With the Court's permission, Monk also filed a supplemental memorandum in support of his § 2255 Motion. (DNs 82, 83.) On March 13, 2017, the undersigned entered an order for evidentiary hearing, concluding that Monk was entitled to an evidentiary hearing on four issues raised in his § 2255 Motion. (DN 85.) Further, the undersigned appointed an attorney to represent Monk for purposes of the evidentiary hearing and any post-hearing briefing. (*Id.*) The undersigned conducted an evidentiary hearing on July 24, 2017. (DN 93.) In compliance with a post-hearing order, after the official transcript was filed, Monk filed a post-hearing brief, to which the United States filed a response, and Monk filed a reply. (DNs 100, 103, 104.) Therefore, this matter is ripe for review.

The analysis below addresses all fifty-two grounds for relief asserted by Monk, including those issues on which Monk was granted an evidentiary hearing. For the reasons set forth below, the undersigned **RECOMMENDS** that Monk's § 2255 Motion be **DENIED**.

## I.     FINDINGS OF FACT

### A.     Factual and Procedural Background

The following recitation of facts is incorporated from the undersigned's Order for

Evidentiary Hearing.  (DN 85.)

> On August 19, 2012, Monk's then-wife discovered that Monk had been engaging
> in sexual activity with her then-seventeen-year-old daughter ("Jane Doe"). Monk's
> wife asked Monk to leave their residence in Louisville, Kentucky. He did, moving
> into a motel in Clark County, Indiana. After Monk left, his wife and Jane Doe
> argued, and Jane Doe left the residence. Monk's wife then filed a missing person's
> report and obtained an Emergency Protection Order ("EPO") against Monk in
> Jefferson County (Kentucky). The EPO required that Monk have no contact with
> his wife or Jane Doe. On August 21, 2012, Monk's wife learned that he and Jane
> Doe were staying together in the motel. She contacted the Clark County (Indiana)
> Sheriff's Department, which dispatched officers to the motel. When they arrived,
> they discovered Monk and Jane Doe in Room 115. It was clear to the officers that
> the two had been staying together in the motel room. The officers then discovered
> that Monk was in violation of the EPO and that Jane Doe had been reported
> missing. They arrested Monk for violating an EPO and contributing to the
> delinquency of a minor.

> The officers transported Jane Doe to a juvenile detention center for being a
> runaway. Clark County Sheriff's Deputy Racheal Lee ("Deputy Lee") interviewed
> Jane Doe, who disclosed that she and Monk had been in a sexual relationship since
> December 2011 and that the motel room contained a sex tape featuring the two.
> On August 22, 2012, Deputy Lee interviewed Monk as well. After being advised
> of and waiving his constitutional rights, Monk admitted the existence of his sexual
> relationship with Jane Doe and stated that most of their sexual contact took place
> in Kentucky. He admitted that he went to find Jane Doe after learning that she had
> left the family residence in Louisville, and that he drove her to the motel in Clark
> County. He stated that a sex tape existed but that he had gotten rid of it. He also
> admitted that he and Jane Doe had exchanged text messages and pictures in which
> they expressed their feelings for one another.

> The same day, the Clark County Sheriff's Department executed a search
> warrant on Room 115 of the motel. The items seized included a camcorder, a diary
> or notebook containing letters and handwritten notes, a Blackberry mobile phone,
> and several 8 millimeter video cassettes. One of the 8 millimeter cassettes
> contained footage, approximately one hour and twenty minute in length, of Monk
> and Jane Doe engaging in sexual activity. Based on a description of the setting,
> Monk's wife advised law enforcement officers that the video was made at the
> family residence in Louisville. Monk had, therefore, transported the tape from
> Kentucky to Indiana. Officers also obtained an [*sic*] executed a search warrant on

2

Monk's iPhone, which revealed numerous text messages between Monk and Jane Doe that were of a graphic sexual nature and included images of their genitals.

On September 6, 2012, this Court authorized issuance of a criminal complaint and arrest warrant charging Monk with violations of 18 U.S.C. § 2422(b), coercion and enticement of a minor to engage in sexual activity, and 18 U.S.C. §§ 2251(a) and 2251(e), coercion of a minor to engage in sexually explicit conduct for purposes of producing child pornography. (DN 1, 3.) On October 2, 2012, Monk was indicted by a federal grand jury on one count of violating 18 U.S.C. § 2422(b) and one count of violating 18 U.S.C. §§ 2251(a) and 2251(e). (DN 13.) The Court ordered him detained pending trial. (DN 12.) At arraignment, Monk entered a plea of not guilty, and the Court ordered him to have no direct or indirect contact with his wife or Jane Doe. (DN 20.) Monk was represented by retained counsel. (DN 19.)

Despite being ordered by the Court to cease contact with Jane Doe and her mother, Monk continued to contact Jane Doe. He did so by writing letters to her, which he sent to his daughter, who then forwarded the letters to Jane Doe. (DN 30 (filed under seal).) Prior to trial, the United States moved (DN 28) to restrict Monk's mail while in custody due to his violation of the Court's order that he not contact Jane Doe. Senior District Judge Charles R. Simpson, III granted that motion (DN 32), directing the Oldham County (Kentucky) Jail to restrict all of Monk's incoming and outgoing mail to matters mailed to and from his attorney or the Court.

After several continuances, a jury trial was set for October 15, 2013. That trial date was remanded and a change of plea hearing was set for September 27, 2013. (DN 33.) Monk, represented by counsel, advised the Court that he wished to change his plea of not guilty to a plea of guilty as to both counts. In an order entered after the hearing, the Court stated that it addressed Monk in open court and "informed [him] of and determined that [he] understood those matters set forth in Fed. R. Crim. P. 11(b)(1)(A) through (N)." (DN 34 at 1.) The Court also determined that the plea was voluntary and not the result of force, threats or promises. (*Id.*) Monk's counsel advised the Court that there was no written plea agreement in the case and that Monk was entering an open plea. (*Id.*) The Court advised Monk that he would not have a right to withdraw the plea at a later date, but that he could make such a request to the Court. (*Id.*) The Court further found, as required under Rule 11(b)(3), that there was a factual basis for the guilty plea, and entered and accepted the plea as to Counts 1 and 2. (*Id.*)

On January 14, 2014, Judge Simpson sentenced Monk to a period of imprisonment of 240 months, to be followed by twelve years of supervised release. (DN 43.) All proceedings were conducted on the record, and official transcripts of the arraignment, change of plea hearing, and sentencing hearing were entered in the record. (DN 55, 56, 76.) Monk did not file a direct appeal.

(*Id.* at PageID # 660-63.)

**B.      Monk's Grounds for Relief**

As set forth in the undersigned's Order for Evidentiary Hearing, Monk asserted fifty-two grounds for relief in his § 2255 Motion, including claimed errors of "constitutional magnitude" and claims of ineffective assistance of counsel.  (DN 85, at PageID # 663.)  Monk's asserted grounds for relief are as follows:

(1)      Counsel failed to file direct appeal;
(2)      Counsel failed to file direct appeal and did not obtain Monk's consent regarding same;
(3)      Counsel failed to explain significance of open plea;
(4)      Monk was unaware of consequences of guilty plea;
(5)      Counsel provided ineffective assistance, generally;
(6)      Counsel failed to fulfill discovery obligations, leading to invalid guilty plea;
(7)      Counsel failed to investigate or discuss possible defenses, leading to invalid guilty plea;
(8)      Counsel failed to retain technical and/or psychological experts;
(9)      Venue was improper;
(10)     Counsel failed to challenge venue;
(11)     Counsel failed to explain possibility of formal plea agreement;
(12)     Counsel failed to negotiate favorable plea agreement;
(13)     Counsel failed to explain possible Fourth Amendment challenges, leading to invalid guilty plea;
(14)     Counsel failed to raise or explain possible Fourth Amendment challenge to motel room search;
(15)     Counsel failed to raise or explain possible Fourth Amendment challenge to motel room search due to Monk's lack of knowledge of emergency protection order issued by Kentucky state court;
(16)     Counsel failed to raise or explain possible Fourth Amendment challenge to motel search and arrest due to allegations against Monk being misdemeanors;
(17)     Counsel failed to raise or explain possible Fourth Amendment challenge to motel room search due to lack of exigent circumstances;
(18)     Counsel failed to raise or explain possible Fourth Amendment challenge to motel room search due to coerced consent;
(19)     Counsel failed to raise or explain possible Fourth Amendment challenge to Indiana arrest;
(20)     Counsel failed to raise or explain possible Fourth Amendment challenge to search and seizure of Monk's cell phone;
(21)     Counsel failed to raise or explain possible Fourth Amendment challenge to searches of Monk's electronic devices;

(22)   Counsel failed to raise or explain possible Fourth Amendment challenge to search and seizure of Monk's cell phone in light of circuit split;

(23)   Counsel failed to explain that Monk could preserve for appeal possible Fourth Amendment challenges;

(24)   Summary of counsel's failures in relation to Fourth Amendment issues;

(25)   Count 1: guilty plea was contrary to congressional intent;

(26)   Counsel provided ineffective assistance with respect to issue set forth in Ground 25;

(27)   Count 1: not all elements required to convict were present;

(28)   Counsel provided ineffective assistance with respect to issue set forth in Ground 27;

(29)   Count 1: indictment was defective as it failed to state underlying offense;

(30)   Counsel provided ineffective assistance with respect to issue set forth in Ground 29;

(31)   Guilty plea was unlawful for reason set forth in Ground 29;

(32)   Substantially the same as Ground 30;

(33)   Monk lacked understanding of Count 1, leading to invalid guilty plea;

(34)   Due process and double jeopardy rights violated due to lack of underlying offense specified in relation to Count 1;

(35)   Counsel provided ineffective assistance by not raising or discussing due process and double jeopardy issues;

(36)   Violation of Kentucky incest statute could not have been underlying offense because Monk's marriage ended;

(37)   Counsel provided ineffective assistance by not challenging application of incest statute;

(38)   Violation of Kentucky incest statute could not have been underlying offense because it does not apply where sexual relations are with non-consanguineous relative over age of consent;

(39)   Substantially the same as Ground 38;

(40)   Count 2: guilty plea was contrary to congressional intent;

(41)   Counsel provided ineffective assistance with respect to issue set forth in Ground 40;

(42)   Monk did not receive copy of presentence investigation report ("PSR") until date of sentencing;

(43)   Counsel provided ineffective assistance with respect to Monk's non-receipt of PSI;

(44)   Sentence enhancement for obstruction of justice was improper;

(45)   Counsel provided ineffective assistance in relation to issue set forth in Ground 44;

(46)   Counsel provided ineffective assistance by failing to retain a mitigation expert for sentencing;

(47)   Supervised release conditions were not individually considered and determined on the record;

(48)   Supervised release conditions are unduly onerous and not suited to this case;

(49)   Counsel provided ineffective assistance by failing to challenge supervised release conditions;

(50)    Restitution to ex-wife was improper;

(51)    Counsel provided ineffective assistance by failing to challenge restitution; and

(52)    Cumulatively, counsel's errors establish ineffective assistance.

(*Id.* at 663-65 (citing DN 64, at PageID # 238-95).)

After review of Monk's § 2255 Motion (DN 64), the United States' Response (DN 79), Monk's Reply (DN 81), and Monk's Supplemental Memorandum (DN 83), the undersigned concluded that Monk was entitled to an evidentiary hearing on four categories of asserted grounds for relief: (1) Monk's trial counsel's failure to file a direct appeal (Grounds 1, 2); (2) Monk's trial counsel's failure to discuss with him the consequences of or alternatives to entering an open plea rather than going to trial (Grounds 3, 7); (3) Monk's trial counsel's failure to discuss with him or pursue violations of the Fourth Amendment (Grounds 13-23); and (4) lack of timely receipt by Monk of the presentence investigation report ("PSR") (Grounds 42 and 43). (DN 85, at PageID # 675.) The undersigned appointed counsel to represent Monk for purposes of preparation for and participation in the evidentiary hearing and any post-hearing briefing required by the Court. (*Id.*) The undersigned then held an evidentiary hearing on July 14, 2017. (DN 93.)

### C.    Findings of Fact from Evidentiary Hearing

At the July 24, 2017 evidentiary hearing, Monk testified and called his trial counsel, Jeremy Bartholomew McMahon ("McMahon") as a witness. (DN 95, at PageID # 693, 736.)[1] McMahon has been practicing law in Louisville, Kentucky since he graduated from law school in 1995. (*Id.* at 693-94.) He maintains a general law practice, and the majority of his criminal defense work is in state court. (*Id.* at 694-95.) Prior to being retained by Monk in 2012, he appeared in this Court in several cases as co-counsel to an experienced defense attorney. (*Id.* at 695-96.) McMahon

---

[1] The undersigned will refer to the transcript of the July 24, 2017 evidentiary hearing (DN 95) by reference to the PageID#s found in the header placed on the transcript by the Clerk at the time of filing, not the internal page numbers of the transcript itself.

testified that Monk's case appears to have been the first criminal case that he ever handled on his own in this Court, though he believed he handled others in the Southern District of Indiana. (*Id.* at 697.)  None of the cases in which McMahon was counsel in federal court prior to Monk's case went to trial or involved evidentiary hearings. (*Id.* at 697-98.)  He did not file any substantive motions in those cases, such as a motion to dismiss, a motion to suppress, a motion related to *Brady* material, or other discovery-related motions. (*Id.* at 698.)  In each of those cases, McMahon's client pleaded guilty. (*Id.* at 706.)  He testified that he advises his clients to do so if it is in their best interest but that he does not believe he has a duty to help the prosecution talk a defendant into pleading guilty.[2] (*Id.*)  Defendant Monk testified that McMahon did not inform him that McMahon had never tried a criminal case in federal court or filed a substantive motion in a federal criminal case. (*Id.* at 741.)

McMahon testified that he is aware of the American Bar Association's standards for competent criminal defense counsel. (*Id.* at 698-99; DN 97, Def.'s Ex. 3.)  He further testified that he is aware of Standard 4-4.3(c), which states, "Defense counsel or counsel's agents should seek to interview all witnesses, including seeking to interview the victim or victims, and should not act to intimidate or unduly influence any witness." (DN 95, at PageID # 699-700; DN 97, Def.'s Ex. 3, at 24.)  In Monk's case, McMahon did not interview any witnesses. (DN 95, at PageID # 700.)  Specifically, he did not interview Jane Doe or Monk's wife, though he testified that he was able to get some information from Monk's wife via her attorney in a divorce action that she initiated against Monk. (*Id.*)  Though he did not interview any witnesses, McMahon testified that he reviewed the evidence in this case, including filings in Kentucky state court regarding "domestic

---

[2] When asked about an email he sent to counsel for the United States in which he wrote, "I will work on Marvin this week," McMahon denied that by "work on," he meant that he would try to get Monk to plead guilty.  He indicated that he meant he would talk to Monk about the case and the options available to Monk at that time. (DN 95, at PageID # 707; *see* DN 97, Def.'s Ex. 5 (e-mail from McMahon to Lawless, dated May 17, 2013, 7:22 PM).)

violence matters," "paperwork generated in Indiana,"[3] two sets of discovery produced by the United States, the recorded interview that Monk gave to law enforcement in Indiana, and the search warrant and evidence recovered in connection therewith.   (DN 95, at PageID # 720-21.) Additionally, McMahon reviewed the videotape created by Monk that showed sexual activity between Monk and Jane Doe,[4] as well as text messages exchanged between the two, some of which included pornographic photographs and "racy dialogue." (*Id.* at 721-22.) McMahon testified that he was very concerned about the impact the video and text messages would have on a jury. (*Id.* at 731-32.)

McMahon did not file any substantive motions—such as a motion to suppress—in Monk's criminal case. (*Id.* at 700, 703.) However, McMahon testified that he is familiar with the Fourth Amendment's protections against unlawful search and seizure and that he knew Monk was arrested in Indiana without a warrant. (*Id.* at 700-01.) McMahon stated that he knew that Monk was arrested for knowingly violating a restraining order and that Monk had not been served with that order at the time of the arrest. (*Id.* at 701.) Monk testified that at the time of his arrest at the motel in Clarksville, Indiana, he did not know what he was being arrested for. (*Id.* at 739.) He was told that it was for violation of a protective order, but he had not been served with a protective order prior to the arrest. (*Id.*)

McMahon agreed with Monk's counsel on direct examination that as a result of the arrest, the government was able to obtain a search warrant to search the hotel room that Monk was staying in with his stepdaughter and that Monk gave a statement to law enforcement officers. (*Id.* at 701-

---

[3] McMahon explained that Monk was also subject to state criminal charges in Indiana for felony "child seduction." Monk was represented by other counsel in relation to those charges.  However, McMahon happened to be in court in Indiana on a day that Monk also appeared in that court, and he was able to discuss with Monk's Indiana counsel and a state prosecutor the nature of the charges in this Court.  The Indiana charges were ultimately dismissed as a result of the resolution of the criminal action in this Court.  (DN 95, at PageID # 724-26; DN 97, Gov't's Ex. 5.)
[4] The video was approximately an hour in length and showed Monk setting up and adjusting the camera and then engaging in prolonged sexual activity with Jane Doe.  (DN 95, at PageID # 722.)

02.)  McMahon was unaware whether Monk was given access to an attorney on the first morning after his arrest but was aware that Monk gave a statement and waived his *Miranda* rights.  (*Id.* at 702-03.)  Monk waived his rights by written and verbal waiver.  (*Id.* at 732.)  Based upon his review of the interrogation video, McMahon described the nature of the interview as conversational in tone and "very kind" in comparison to others he has seen.  (*Id.* at 732-33.)  Nothing led him to believe that Monk was in serious physical pain,[5] being coerced, or could not understand the interrogation.  (*Id.* at 733.)

However, Monk testified that when he was being led to the courtroom the morning after his arrest, his wife and her son attacked him, beating and kicking him and causing cracked ribs.  (*Id.* at 739-40.)  Monk testified that he was not given an opportunity to call a lawyer prior to being questioned by a detective.  (*Id.* at 740.)  He did not know what he was being charged with or that it was possible that he could be charged under federal law.  (*Id.* at 740-41.)  He said he was in extreme pain at the time of the interrogation, which he says he mentioned several times to the detective who conducted the interview.  (*Id.* at 741.)  When asked why he decided to make a statement to the detective that morning, Monk testified, "I don't actually know."  (*Id.* at 740.)

McMahon testified that his review of the case did not lead him to see anything that would warrant a motion to challenge the search warrant that was issued for Monk's hotel room.  (*Id.* at 704-05.)  McMahon believed that the search warrant affidavit and the statements made by Monk and the minor victim provided "an abundance of probable cause," and therefore, using his "strategic judgment," he did not think there was a basis to move forward in good faith with a motion to suppress.  (*Id.* at 726-27.)  Monk testified that McMahon did not discuss with him the

---

[5] McMahon stated that while Monk claimed at the time to have back problems and did mention back pain to police during the interview, McMahon believed Monk could be impeached as to that issue based on Monk's actions in the pornographic video.  (DN 95, at PageID # 733.)

possibility of filing a motion to suppress or anything regarding interviewing witnesses or preparing for trial.  (*Id.* at 742.)  He testified that he had very little discussion with McMahon for the duration of their relationship and that McMahon did not discuss with him any options other than pleading guilty.  (*Id.*)

Regarding plea negotiations, McMahon testified that he discussed with the United States a potential plea agreement, but the United States informed him that it would not enter into a plea agreement with Monk due to the interception of letters from Monk to Jane Doe.  (*Id.* at 717.)  Pursuant to an order previously entered by the Court, Monk was to have no contact with Jane Doe.  (*Id.*)  McMahon sent a letter to Monk on August 28, 2013 in which he stated, among other things, that the United States withdrew from plea negotiations because of Monk's attempts to communicate with Jane Doe.  (*Id.* at 707; DN 97, Def.'s Ex. 6.)  McMahon also stated in his letter that the United States' motions regarding the letters "concerned [him] greatly" and that "[t]he letters could support a charge of witness intimidation/tampering."  (DN 97, Def.'s Ex. 6.)  McMahon testified that he continued to ask the United States to negotiate a plea agreement even after counsel for the United States informed him that the United States would not enter into an agreement with Monk.  (DN 95, at PageID # 718.)

As a result of this withdrawal, McMahon informed Monk in his August 28, 2013 letter that Monk was left with two options: "So, either you will have to enter a blind plea or go to trial."  (DN 97, Def.'s Ex. 6.)   The letter explained:

> The proof against you is overwhelming insofar as you provided a detailed Mirandized confession and cell phone and video evidence exists that prove the case against you.  The idea that a recording was a mistake will never fly in front of a jury or the sentencing judge.  I have seen the video, and it will appear that you set up the camera to record the sexual encounter and nothing else.

> Please let me know how you wish to proceed in this action.

(*Id.*)

With respect to the options that McMahon presented to Monk in his letter, that is, accept a "blind plea or go to trial," McMahon testified that those were the only options available to Monk after the United States withdrew from plea discussions.  (DN 95, at PageID # 723.)  McMahon further testified that McMahon believed it was very important for Monk to accept responsibility for his actions because he believed that would result in the lightest sentence possible.  (*Id.*)  McMahon thought that Monk had a chance for a lighter sentence by entering an open plea than he would if he went to trial.  (*Id.*)  McMahon testified, "I had a concern for him that the sentencing would be much worse when all of that evidence was displayed in front of the Court at a trial." (*Id.*)

On cross-examination by the United States, McMahon acknowledged that he sent other letters, on other topics, to Monk, including letters in March and April 2013. The letters contained legal advice on issues ranging from Monk's divorce to the strength of the evidence against him in this case.  (*Id.* at 718-19; DN 97, Gov't's Ex. 2-4; DN 97, at Def.'s Ex. 6.)  For example, in March 2013, McMahon sent Monk a letter with the copies of the statutes Monk was alleged to have violated.  (DN 97, Gov't's Ex. 2.)  McMahon asked Monk to review the statutes because "it [was] important to realize how the law is applied for both offenses." (*Id.*)  In April 18, 2013, McMahon sent Monk an outline of the relevant sentencing guidelines and advised him that a conviction on the production charge could carry a life sentence in prison.  (DN 97, Gov't's Ex. 3.)  McMahon also stated in his letter:

> The last time we spoke, you indicated you wished to go to trial.  That is a course of action that I cannot recommend to you because the video evidence for the production charge was obtained prior to [Jane Doe]'s eighteenth birthday, so the conviction would be easily obtained by the government as you and she are identifiable on the video and the content satisfies the statutory elements for the production charge.

(*Id.*)  McMahon further advised Monk that he could explore a plea agreement if so authorized and cautioned that "failure to do so will cost [Monk] dearly." (*Id.*)   The final letter offered by the United States included McMahon's confirmation that a change of plea hearing had been scheduled "upon [Monk's] authority . . . ." (DN 97, Gov't's Ex. 4.)

Monk entered his open guilty plea on September 27, 2013.  (DN 95, at PageID # 715.) Monk acknowledged that at his change of plea hearing, he answered affirmatively when the judge asked him whether he was fully satisfied with his lawyer's advice.  (*Id.* at 746.)  He said that was untrue, but he did not think he had another choice as to how to answer that question.  (*Id.*)  Further, he acknowledged that when the judge apprised him of his rights, he did not ask for appointment of another attorney or for a jury trial.  (*Id.* at 746-47.)

At Monk's sentencing hearing, McMahon informed the judge, that he would no longer represent Monk after that hearing.   Specifically, when asked by the judge at the end of the sentencing hearing if there was anything further, McMahon and the judge had the following exchange:

| | |
|---|---|
| McMahon: | Your Honor, just before we go off the record, I want to thank the court for entertaining my objections today and also let the court know that my contract for representation is expired now.  And I know that Mr. Monk is indigent so I don't know if the court would like to appoint counsel for him or entertain that right now so the matter might be preserved, rather than wait for a later time. |
| The Court: | Well, I think we need to give Mr. Monk an opportunity to determine what he wants to do.  You are telling him that you're no longer representing him after we adjourn here; correct? |
| McMahon: | Yes, sir, that's true, and he's aware of that. |
| The Court: | So he will have an opportunity through you perhaps to request an appointment or appointment of counsel – |
| McMahon: | I'll be happy to file that if need be. |

(DN 76, at PageID # 378; *see also* DN 95, at PageID # 710-11.)   After the sentencing hearing adjourned, McMahon stated that he did not do anything else on Monk's case and did not hear from Monk again.  (DN 95, at PageID # 711.)

At the sentencing hearing, the judge directly advised Monk that he had a right to appeal his sentence to the United States Court of Appeals for the Sixth Circuit, and that it was "essential that he determine [his] course of action on this because it is required, if [a defendant] wish[es] to appeal, that [he] file a notice of appeal within 14 days of entry of the judgment in th[e] case."  (*Id.* at 715-16; DN 76, at PageID # 377.)  The judge further informed Monk that if he was not represented by an attorney after the sentencing hearing, he could give timely notice to the Clerk of Court, who would then prepare and file a notice of appeal.  (DN 76, at PageID # 377-78.)  Monk acknowledged that he was present when the judge informed him that he had fourteen days to file a notice of appeal and that he could ask the Clerk of Court to file a notice of appeal.  (DN 95, at PageID # 745-48.)  McMahon testified that a lawyer has a duty to discuss an appeal with his client, that he informed Monk that he had the right to challenge his sentence, and that he recalls that after the sentencing hearing, he told Monk that he would make sure the appeal was handled if Monk wanted to file one.  (*Id.* at 711-12.)  However, McMahon testified that he has no record or memory of Monk ever asking him to file an appeal.  (*Id.* at 713, 716.)

McMahon testified on cross-examination by the United States that he received an email from Monk's sister, Robin Donaldson ("Donaldson"), on June 12, 2014, approximately five months after Monk's January 14, 2014 sentencing.  (*Id.* at 714; DN 97, Gov't's Ex. 1.)  Therein, Donaldson stated that Monk asked her to contact McMahon to inquire as to whom Monk should contact "in order to start the appeal process," and that Donaldson was unaware of whether Monk had decided to appeal, but that he wanted to keep the option open.  (DN 95, at PageID # 714.)

McMahon responded the same day, stating that Monk "was advised in court of his appellate time and to notify [McMahon] if he wished to appeal," but that McMahon never heard from him. (*Id.* at 714; DN 97, Gov't's Ex. 1.) McMahon further informed Donaldson that, the time for a direct appeal had expired. (DN 95, at PageID # 714; DN 97, Gov't's Ex. 1.)

Monk testified that he wanted to appeal his twenty-year sentence. (DN 95, at PageID # 743.) Specifically, he testified that during the sentencing hearing, when the judge mentioned that Monk could file an appeal, Monk "motioned" to McMahon that he wanted to appeal, and McMahon asked Monk to wait until the judge finished. (*Id.* at 743.) Further, Monk testified that at the end of the hearing, McMahon said he would go to the jail to discuss with Monk what needed to be filed for purposes of an appeal. (*Id.*) Monk never saw McMahon again and testified that he had no way of contacting McMahon. (*Id.* at 744.) On cross-examination, Monk testified that he called McMahon several times from jail because McMahon did not show up to visit him and that he was not able to get a hold of McMahon. (*Id.* at 745.) Monk said that he never contacted the Clerk of Court because he thought McMahon handled the notice of appeal, despite his alleged inability to reach McMahon by phone or see him in person. (*Id.* at 749.) Several months later, Monk asked his sister to follow up with McMahon regarding what was needed to file an appeal brief. (*Id.* at 743-44.) He believed McMahon had already filed the notice of appeal, though he acknowledged that at the sentencing hearing, McMahon informed the Court that he would not be representing Monk after that day and that the judge confirmed Monk's understanding of the same. (*Id.* at 744, 750.)

With respect to when Monk received a copy of the PSR in his case, McMahon testified that he does not send copies to his clients, predominantly due to concerns about confidentiality. (*Id.* at 728.) Upon McMahon's review of the PSR, he believed it was largely appropriate in its summary

of Monk's personal, social, work, family, and criminal history; however, McMahon did file objections to the PSR. (*Id.* at 728-29.) He reviewed the PSR with Monk on the day of sentencing. (*Id.* at 729.) At the sentencing hearing, the judge asked Monk whether he had received the PSR and had an opportunity to go through it with counsel, and Monk answered affirmatively. (*Id.*; DN 76, at PageID # 333.)

## II.     CONCLUSIONS OF LAW

### A.     Legal Standard

#### 1.     Standard of Review for § 2255 Motion

A federal prisoner seeking relief under 28 U.S.C. § 2255 "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). To prevail on a § 2255 motion alleging constitutional error, the movant must show that the error had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). To prevail on a § 2255 motion alleging non-constitutional error, the movant must show a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999); *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). The movant must sustain his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The Sixth Circuit has consistently held that a § 2255 motion may not be used to re-litigate an issue that was raised on appeal absent highly exceptional circumstances, such as an intervening

change in the law. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Additionally, "[w]here a defendant has procedurally defaulted on a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986), *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), and *Smith v. Murray*, 477 U.S. 527, 537 (1986)). Notably, under the cause and prejudice test, "cause" must be something that cannot be fairly attributed to the movant. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

### 2.    Standard for Ineffective Assistance of Counsel Claim

Claims of ineffective assistance of counsel are properly brought in a § 2255 Motion. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The Sixth Amendment entitles a defendant not only to counsel but to counsel that is reasonably effective. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A claim of ineffective assistance of counsel requires the defendant to show that (1) counsel's performance was deficient and (2) that the deficiency prejudiced him. *Id.* Conclusory allegations or bare bones statements regarding counsel's effectiveness fall short of meeting that burden. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that "conclusory statement" by petitioner was "wholly insufficient to raise the issue of ineffective assistance of counsel").

To satisfy the first prong of the *Strickland* test, the defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if it fell below an "objective standard of reasonableness" based on "prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance must, consequently, "identify

the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 688.  The Court is required to evaluate the objective reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all of the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *see id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

Under the second *Strickland* prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.*  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Where a defendant has entered a guilty plea, the "prejudice" prong focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In this context, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir. 1992) ("Prejudice is proved if the defendant shows a reasonable probability that, but for counsel's defective advice, he would not have pleaded guilty.").

**B.** **Monk's Grounds for Relief**

The undersigned will address each of Monk's fifty-two grounds for relief listed in Section I(B) above but in a different order than as presented by Monk.  First, the undersigned will address Monk's claim that McMahon failed to file a direct appeal (Grounds 1 and 2).  Second, the undersigned will consider all claims that relate to pre-plea allegations of error and ineffective assistance (Grounds 8-10, 25-32, 34-41).  Third, the undersigned will address claims related to the knowing and voluntary nature of Monk's guilty plea (Grounds 3-4, 6-7, 11-24, 33).  Fourth, the undersigned will address any claims of error related to post-plea events and sentencing (Grounds 42-51).  Finally, the undersigned will address Monk's claims of general ineffective assistance of counsel (Grounds 5 and 52).

### 1. Failure to File Direct Appeal—Ineffective Assistance (Grounds 1 and 2)

In Grounds 1 and 2 of his § 2255 Motion, Monk argued that his trial counsel rendered ineffective assistance by failing to file a direct appeal.  (DN 64, at PageID # 238-39.)  The Court granted Monk an evidentiary hearing based in part on this issue.  (DN 85, at PageID # 666-69.)

As noted above, to establish an effective assistance of counsel claim, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *Strickland*, 466 U.S. at 687.  This inquiry likewise applies to a defendant's claim that his attorney failed to file a notice of appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000).  The Supreme Court "ha[s] long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Id.* at 477.  In *Flores-Ortega*, the Supreme Court reaffirmed that an attorney who ignores his client's express instructions to file an appeal has rendered deficient performance within the meaning of *Strickland* and that prejudice is presumed in those circumstances without any

inquiry into the merits of the appeal.  *Id.* at 477, 483; *see also Sarlog v. United States*, 422 Fed. App'x 399, 402 (6th Cir. 2011).

Monk alleged that he "made it clear" to his attorney, McMahon, that he wanted to file an appeal and that despite this intention being known, McMahon failed to consult with him regarding an appeal or to file one.  (DN 64, at PageID # 238-39; DN 81, at PageID # 416-17; DN 83, at PageID # 428-30; DN 104, at PageID # 806.)  Specifically, he alleged that he demonstrated his desire to appeal to McMahon at his sentencing hearing, but his post-hearing brief and his testimony at the evidentiary hearing are inconsistent as to the details of this demonstration.  In his post-hearing brief, Monk asserted that he told McMahon at the sentencing hearing that he wanted to appeal and that McMahon promised to visit Monk in jail on the following Friday to discuss filing an appeal.  (DN 100, at PageID # 765.)  Monk then stated that McMahon did not visit Monk after the sentencing hearing, did not accept Monk's phone calls from jail, and did not file a notice of appeal.  (*Id.*)  However, Monk's testimony at the evidentiary hearing offered a different account. He testified that when the judge advised him of his right to appeal his sentence, including that a notice of appeal had to be filed within fourteen days, he "motioned" to McMahon that he wanted to appeal, but McMahon told him to wait until the judge finished speaking.  (DN 76, at PageID # 377; DN 95, at PageID # 743; DN 100, at PageID # 765.)  He did not testify that he affirmatively told McMahon he wanted to appeal.  In contrast, McMahon affirmatively testified that Monk never asked him to file an appeal.  (DN 95, at PageID # 716.)  McMahon also testified that when he received a written inquiry regarding an appeal from Monk's sister several months later, McMahon immediately responded that the time for a direct appeal had passed.  (*Id.* at 714, 743-44; DN 97, at Gov't's Ex. 1.)

On cross examination, Monk admitted that the judge informed him of both the fourteen-day deadline to appeal and that Monk could ask the Clerk to file a notice of appeal on his behalf. (DN 95, at PageID # 748-49.)  Monk also admitted that he did not reach out to ask the Clerk to file a notice of appeal on his behalf even though he allegedly could not reach McMahon by phone and even though McMahon had informed the judge at the sentencing hearing that he would no longer represent Monk after the hearing concluded.  (*Id.* at 744, 749-51.)

Having considered the testimony offered by both McMahon and Monk on this issue, as well as each Party's post-hearing briefing, the undersigned does not credit Monk's testimony regarding the notice of appeal issue.  The following factors are relevant to that conclusion:

(1)     Monk acknowledged that the judge specifically informed him of the fourteen-day window in which he had to file a notice of appeal (*Id.* at 748-49);

(2)     Monk acknowledged that the judge specifically informed him that he could request that the Clerk of Court file a notice of appeal for him, but he did not do so (*Id.* at 749-51);

(3)     Monk acknowledged that McMahon informed the judge on the record that McMahon would no longer represent Monk after the sentencing hearing concluded (*Id.* at 750);

(4)     Monk's description of "motioning" to McMahon during the sentencing hearing is vague as to what exactly he allegedly did to communicate to McMahon that he desired to appeal (*Id.* at 743);

(5)     McMahon testified credibly that he does not recall Monk having requested, at any time, that he file a notice of appeal (*Id.* at 716);

(6)     When Monk's sister contacted McMahon approximately five months later, McMahon immediately responded that he never heard from Monk regarding a request to file a notice of appeal (*Id.* at 714, 743-44);

(7)     Monk does not point to any documentary evidence of efforts to reach McMahon after the date of the sentencing hearing; he merely alleges, without support, that he attempted to contact McMahon by phone when McMahon did not show up for their purported jailhouse meeting in the days following the sentencing hearing (*Id.* at 743, 750-51); and

(8)     Even after receiving McMahon's response to his sister, Monk did not file a habeas petition until approximately seven months after that response and more than one year after the sentencing hearing (*Id.* at 743-44; DNs 58, 59, 64).

Based on the foregoing, the undersigned finds that Monk has not shown that he gave specific instructions to McMahon to appeal and will recommend his ineffective assistance of counsel claim be denied as to his argument that McMahon disregarded his express instructions in failing to file a notice of appeal.

Monk also alleged that he received ineffective assistance of counsel because McMahon never "discussed [his] options and choices" with respect to a direct appeal with Monk.  (DN 64, at PageID # 239.)  As noted by the Supreme Court in *Flores-Ortega*, even in the absence of a client's specific instructions, an attorney may have a duty to consult with his or her client about an appeal and determine whether his or her client wishes to pursue one.  *Flores-Ortega*, 528 U.S. at 478. The Supreme Court explained that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  If counsel's alleged deficient performance is failure to consult regarding an appeal, the defendant must also demonstrate prejudice by "presenting evidence that had counsel consulted, defendant would have appealed, or that there exist nonfrivolous grounds for appeal." *Sarlog*, 422 Fed. App'x at 402-03.

Here, Monk alleged in his § 2255 Motion and testified at the evidentiary hearing that McMahon was supposed to come discuss an appeal with him at the jail but never did.  (DN 95, at PageID # 743-45.)  In his § 2255 Motion, Monk stated that McMahon "never discussed the idea

(or benefits/risks) of filing a direct appeal" with Monk.  (DN 64, at PageID # 239.)  To the contrary, McMahon testified that he discussed an appeal with Monk after the sentencing hearing.  (DN 95, at PageID # 711.)  McMahon advised Monk that Monk had the right to appeal his sentence and told him that if he wanted to do so, McMahon would see that it was filed pursuant to the discussion on the record at the sentencing hearing.  (*Id.* at 711-12, 716.)  However, McMahon never heard from Monk after that.  (*Id.* at 716.)  Having considered McMahon's and Monk's testimony, the undersigned does not credit Monk's representation that McMahon never discussed an appeal with him.  Relevant to that conclusion is McMahon's credible testimony that he did discuss an appeal with Monk, as well as the numerical factors set forth above.

Further, even if Monk had demonstrated that McMahon performed deficiently with respect to his duty to consult with Monk regarding an appeal, the undersigned finds he has not demonstrated prejudice regarding the failure to consult.  Though a defendant seeking to show prejudice need not demonstrate non-frivolous grounds for appeal to succeed on a § 2255 Motion, the defendant "must at least demonstrate though evidence of another type a reasonable probability that he *would have* appealed."  *United States v. Lovell*, 83 Fed. App'x 754, 760 (6th Cir. 2003).  Here, the undersigned finds that Monk has presented no such evidence.  Of particular relevance to this conclusion is the length of time Monk waited in filing his § 2255 motion after learning that McMahon did not file a notice of appeal.  Monk waited nearly seven months after his sister received McMahon's response regarding an appeal to file the instant § 2255 motion.  This length of delay weighs heavily against Monk's contention regarding a reasonable probability he would have appealed. *See, e.g.*, *Cross v. United States*, 73 Fed. App'x 864, 866 (6th Cir. 2003) (noting that because defendant waited nearly eight months after sentencing before filing his § 2255 motion, the "long delay demonstrates no interest in appeal . . ."); *Johnson v. United States*, 364 Fed. App'x

972, 977 (6th Cir. 2010) (relying in part on the fact that the defendant waited nearly a full year after sentencing before filing his § 2255 motion to find there was no prejudice under *Strickland*). Additionally, though Monk was informed at sentencing of the fourteen-day window for an appeal and of the fact that the Clerk would file one for him, Monk did not ask the Clerk to file one when he allegedly could not reach McMahon.  (DN 95, at PageID # 744, 748-51.)  He did not do so even though he was informed at the sentencing hearing that McMahon would no longer represent him after the hearing concluded.  (*Id.*)  The undersigned finds this failure to contact the Clerk himself in light of the circumstances also weighs against a reasonable probability Monk would have appealed.  Further, when Monk's sister reached out to McMahon on June 12, 2014, approximately five months after Monk's January 14, 2014 sentencing, she said that her brother asked her to reach out regarding "who [Monk] would contact in order to start the appeal process?"  (*Id.* at 714; DN 97, Gov't's Ex. 1.)  She then stated, "I don't know that he has decided to do so, but he would like to have the contact information just to have that option open."  (DN 97, Gov't's Ex. 1.)  The fact that Monk had not yet decided whether to file an appeal months after his deadline to do so had expired casts serious doubts about his desire to do so during the relevant window.

Based on the foregoing, the undersigned recommends that Monk's § 2255 Motion be denied as to Grounds 1 and 2.

## 2. Grounds Related to Pre-Plea Conduct and Ineffective Assistance Related Thereto (Grounds 8-10, 25-32, 34-41)

Many of the grounds in Monk's § 2255 Motion relate to events that occurred or arguments that could have been raised prior to his entry of an open guilty plea.  The undersigned finds that the following grounds fall into this category:

(8)     Counsel failed to retain technical and/or psychological experts;
(9)     Venue was improper;
(10)    Counsel failed to challenge venue;

(25)   Count 1: guilty plea was contrary to congressional intent;
(26)   Counsel provided ineffective assistance with respect to issue set forth in Ground 25;
(27)   Count 1: not all elements required to convict were present;
(28)   Counsel provided ineffective assistance with respect to issue set forth in Ground 27;
(29)   Count 1: indictment was defective as it failed to state underlying offense;
(30)   Counsel provided ineffective assistance with respect to issue set forth in Ground 29;
(31)   Guilty plea was unlawful for reason set forth in Ground 29;
(32)   Substantially the same as Ground 30;
(34)   Due process and double jeopardy rights violated due to lack of underlying offense specified in relation to Count 1;
(35)   Counsel provided ineffective assistance by not raising or discussing due process and double jeopardy issues;
(36)   Violation of Kentucky incest statute could not have been underlying offense because Monk's marriage ended;
(37)   Counsel provided ineffective assistance by not challenging application of incest statute;
(38)   Violation of Kentucky incest statute could not have been underlying offense because it does not apply where sexual relations are with non-consanguineous relative over age of consent;
(39)   Substantially the same as Ground 38;
(40)   Count 2: guilty plea was contrary to congressional intent; and
(41)   Counsel provided ineffective assistance with respect to issue set forth in Ground 40.

However, these claims may not be considered in this proceeding.  As the United States Supreme Court explained in *Tollett v. Henderson*,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective].

411 U.S. 258, 267 (1973).  The Sixth Circuit has held that this includes ineffective assistance of counsel claims that address only pre-plea constitutional deprivations that do not "attack the voluntary and intelligent nature" of a defendant's guilty plea.  *United States v. Stiger*, 20 Fed. App'x 307, 308-09 (6th Cir. 2001); *see also United States v. Kotsonis*, No. 17-509, 2017 WL

7310633, at *2 (6th Cir. Sept. 12, 2017) ("Because [defendant]'s ineffective-assistance claims are based on challenges regarding pre-plea conduct that have been waived, they are derivatively meritless insofar as he fails to link them to the alleged involuntariness of his plea."); *Rice v. Olson*, No. 16–1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) ("Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the . . . *Tollett* rule."). The undersigned finds that Monk's claims listed above, including his ineffective assistance of counsel claims, cannot be considered in this proceeding because he has failed to link them to the knowing and voluntary nature of his plea.

The undersigned further finds that Grounds 9, 25, 27, 29, 31, 34, 36, 38, and 40 are procedurally defaulted because Monk failed to raise these issues on direct appeal. A defendant is deemed to have procedurally defaulted an issue that could have been but was not raised on direct appeal absent a showing of "cause" and "prejudice" or that the movant is "actually innocent." *Bousley*, 523 U.S. at 621. A defendant may show cause by demonstrating ineffective assistance of counsel. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000). Here, Monk's only attempt to show cause is his argument that McMahon's failure to file a direct appeal constituted ineffective assistance of counsel. As the undersigned has already rejected Monk's ineffective assistance of counsel claim on this basis above, the undersigned finds Monk has failed to show cause to overcome the procedural default.

Based on the foregoing, the undersigned recommends that Monk's § 2255 Motion be denied as to Grounds 8-10, 25-32, and 34-41.

### 3. Grounds Related to the Knowing and Voluntary Nature of Monk's Plea (Grounds 3-4, 6-7, 11-24, 33)

Monk argued in his § 2255 Motion that his guilty plea was not knowing and voluntary because he did not understand the exact criminality alleged in Count 1 of the indictment (Ground

33).  (DN 64, at PageID # 275.)  He also argued that his guilty plea was not knowing and voluntary as a result of ineffective assistance of counsel.  Specifically, he alleged McMahon (1) failed to fulfill his discovery obligations (Ground 6); (2) failed to investigate and discuss possible defenses with Monk (Ground 7); (3) failed to explain the possibility of a formal plea agreement (Ground 11); (4) failed to negotiate a plea agreement (Ground 12); (5) failed to explain the significance of an open plea (Ground 3); (6) failed to explain that Monk could enter a conditional plea (Ground 23); (7) failed to explain the consequences of a guilty plea (Ground 4); and (8) failed to file meritorious motions to suppress (Grounds 13-22, 24).  (*Id.* at 240-41, 243-46, 250-51, 265, 275.) The undersigned will address each of these claims below.

### a)      Ground 33

As to Monk's argument that he did not understand the exact criminality alleged in the indictment and that therefore, his guilty plea was neither knowing nor voluntary (Ground 33), the undersigned finds that this claim is procedurally defaulted because Monk failed to raise it on direct appeal.  *See Bousley*, 523 U.S. at 621.  Monk's only attempt to show cause for this failure is his argument that McMahon's failure to file a direct appeal constituted ineffective assistance of counsel.  The undersigned has already rejected Monk's ineffective assistance claim on this basis above; therefore, the undersigned finds that Monk has failed to show cause to overcome the procedural default.  The undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 33.

### b)      Grounds 6 and 7

Monk alleged that McMahon was ineffective in failing to fulfill his discovery obligations (Ground 6) and to investigate and discuss possible defenses with Monk (Ground 7).  (DN 64, at PageID # 243-46.)  To succeed on this claim, Monk must show both that McMahon's performance

was deficient and that Monk suffered prejudice as a result in that but for McMahon's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Strickland*, 466 U.S. at 687; *Hill*, 474 U.S. at 59.  McMahon testified that he did review the evidence against Monk. Specifically, he reviewed "the evidence from the paperwork generated in Indiana, including what was filed in Jefferson Family Court on the domestic violence matters," the discovery from the United States, reports generated by Clark County with regard to the arrest in that case, and Monk's statement, as well as the videotape made by Monk of the sexual activity between himself and Jane Doe. (DN 95, at PageID # 702, 720-21.)  He also reviewed still photographs from the videotape and text messages between Monk and Jane Doe.  (*Id.* at 721.)  McMahon indicated he did not interview either Monk's wife or Jane Doe, though he was able to gain some information via Monk's wife's attorney.  (*Id.* at 700.)

As the Supreme Court stated in *Strickland*, the relevant inquiry is "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  Though Monk's post-hearing brief characterizes what McMahon did as simply "stand[ing] next to his client wearing a suit," the undersigned finds that Monk made a reasonable investigation under the circumstances at the time.  Specifically, given the content of the text messages between Monk and Jane Doe and the video of their sexual encounter, McMahon could have reasonably concluded that no additional investigation, aside from that described above, was necessary.  "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."  *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).  Here, McMahon could have reasonably concluded based on the evidence he did review that his time was better spent attempting to negotiate a favorable plea agreement for Monk.  Indeed, McMahon advised

Monk in an April 18, 2013 letter of this strategic decision, writing that he could not recommend going to trial because "the conviction would be easily obtained by the government as [Monk] and [Jane Doe] are identifiable on the video and the content satisfies the statutory elements for the production charge." (DN 97, at Gov't's Ex. 3.)  McMahon further testified that was his thought process at the evidentiary hearing, stating, "I wanted to make sure, to the extent I could, to get him the best result with a minimum amount of time on a case where I saw the evidence as pretty bad against him . . . ."  (DN 95, at PageID # 727.)

Though Monk argued in his § 2255 Motion that his attorney failed to use what discovery McMahon did receive to "craft a viable trial defense" and stated that he believed that he "had several viable defenses," Monk cited no specific defenses McMahon should have raised.  (DN 64, at PageID # 243.)  Likewise, as to his failure to investigate claims, Monk provided no evidence that McMahon would have uncovered with further investigation.  Accordingly, the undersigned finds that Monk has not demonstrated deficient performance with respect to his claims that McMahon failed to investigate or fulfill his discovery obligations.

The undersigned further finds even if McMahon's performance had been deficient, Monk has not demonstrated prejudice with respect to Grounds 6 and 7.  While Monk asserted in his § 2255 Motion that he "was unable to exercise [his] constitutional right to choose," that he "did not select the best option for [himself]," and that he "felt he had no choice but to plead guilty," he did not assert that had he been properly advised of his options he would have forgone a guilty plea and gone to trial.  (*Id.* at 240, 245-46.)  Such a showing is required to prove prejudice.  *Hill*, 474 U.S. at 59 (1985); *Warner*, 975 F.2d at 1214.  Accordingly, the undersigned will recommend Monk's § 2255 Motion be denied as to Grounds 6 and 7.

### c)    Grounds 11 and 12

Monk also alleged that McMahon failed to explain the possibility of a formal plea agreement (Ground 11) and to negotiate a plea agreement (Ground 12).  (DN 64, at PageID # 250-51.)  Again, to succeed, Monk must prove that McMahon performed deficiently and that Monk was prejudiced as a result.  *Strickland*, 466 U.S. at 687; *Hill*, 474 U.S. at 59.  McMahon testified that having reviewed the evidence and sent Monk copies of the statutes under which Monk was charged for his review, McMahon urged Monk to allow him to negotiate a plea agreement given the strength of the evidence against Monk, the potential penalties, and the relevant sentencing guidelines.  (DN 97, at Gov't's Exs. 2-3.)  While Monk agreed that McMahon could negotiate, as McMahon was attempting to negotiate a plea agreement with the United States, Monk violated a no-contact order imposed by the Court by writing letters to Jane Doe.  (DNs 28-30, 32; DN 95, at PageID # 717.)  The record is clear that while the Parties engaged in at least some plea negotiations prior to then, the United States communicated to McMahon that after Monk violated the no-contact order, the United States would no longer participate in plea negotiations with Monk.  (DN 95, at PageID # 707-08, 717-18; DN 79, at PageID # 394 n.1.)  At that point, McMahon advised Monk in writing that this development left Monk with two options: trial or an open plea.  (DN 97, Def.'s Ex. 6.)  However, McMahon also testified that he continued to ask the United States to negotiate after that date to no avail.  (DN 95, at PageID # 718.)

Regarding Monk's assistance in plea negotiations, Monk also asserted that an e-mail to counsel for the United States shows that McMahon endeavored to persuade Monk to enter a guilty plea.  (DN 104, at PageID # 802.)  In a May 17, 2013 e-mail to counsel for the United States, McMahon stated, "I will work on Marvin this week."  (DN 97, Def.'s Ex. 5 (e-mail from May 17, 2013, 7:22 PM)).  An examination of the totality of the circumstance surrounding this e-mail

refutes Monk's interpretation of the statement.  There had been a further proceedings date in the case earlier that day, at which the Court discussed the status of the case.  (DN 25.)  In its post-proceedings order, the Court set a deadline for Monk to enter a change of plea with a plea agreement.  (*Id.* at PageID # 46.)  McMahon testified at the evidentiary hearing that he and counsel for the United States had discussions about "where any [plea] offer was going to be."  (DN 95, at PageID # 717.)  In light of McMahon's testimony regarding ongoing attempts at negotiation, the undersigned does not find that McMahon's statement indicated he was going to attempt to persuade Monk to plead guilty.  It suggests, as McMahon testified on cross-examination, that McMahon was going to speak with Monk about his case and the options available to him given the evidence.  (*Id.* at 707.)  While it is understandable that Monk would feel frustration or anger with his own attorney telling opposing counsel that he would "work on" Monk, the undersigned finds that in context, McMahon's language is not as ominous as it may appear.

Under these circumstances, the undersigned finds that McMahon did not render deficient performance with respect to either explaining the possibility of a formal plea agreement (Ground 11) or negotiating a plea agreement (Ground 12).  McMahon discussed the possibility of a formal plea agreement with Monk in writing.  (DN 97, at Gov't's Ex. 3.)  Further, McMahon testified credibly that he engaged in active negotiations with the United States, even after the United States chose to withdraw from the same given Monk's attempts to contact Jane Doe in violation of a court order.  Though Monk alleged in his § 2255 Motion that he believed that with a plea agreement he would have received a more favorable sentence, Monk is neither entitled to a plea agreement as a matter or right, nor has he demonstrated under the circumstances described above that McMahon's conduct is the reason one was unable to be negotiated.  The undersigned finds Monk has failed to show that McMahon performed deficiently regarding explaining the possibility of a formal plea

agreement or negotiating a plea agreement.   Because Monk has not demonstrated McMahon performed deficiently, the undersigned need not address, and declines to address, whether Monk suffered prejudice as a result.   *See Sowell v. Bradshaw*, 372 F.3d 821, 838 (6th Cir. 2004) ("The Court is not required to address both components of *Strickland* if one component fails."). Accordingly, the undersigned will recommend that Monk's § 2255 Motion be denied as to Grounds 11 and 12.

### d)      Ground 3

Monk also argued that prior to entering his open plea, McMahon did not "explain any of the various options concerning how and whether to plea, [his] chances of success and/or the expected results of [his] various courses of action" (Ground 3).   (DN 64, at PageID # 240.) Again, to succeed, Monk must prove that McMahon performed deficiently and that Monk was prejudiced as a result.   *Strickland*, 466 U.S. at 687; *Hill*, 474 U.S. at 59.   McMahon testified credibly that he did discuss Monk's options as far as an open plea or going to trial with Monk, despite what Monk has alleged.   (DN 95, at PageID # 723.)   Further, under the circumstances set forth above, McMahon's written advice regarding Monk's options insofar as entering an open plea or going to trial accurately summarized the available options after the United States withdrew from plea negotiations.   McMahon had also advised Monk in writing regarding McMahon's concerns about going to trial given the strength of the evidence against Monk.   (DN 97, Gov't Ex. 3.)   The *Strickland* standard includes the strong presumption that counsel's strategic decisions and performance were reasonable.   *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Accordingly, as McMahon did advise Monk regarding his options, the undersigned finds that Monk has not demonstrated McMahon performed unreasonably with regard to advising Monk about his options prior to the entry of his open plea.

The undersigned further finds that Monk has not demonstrated he was prejudiced as a result of any failure by McMahon to discuss Monk's options.  Though Monk alleged in his § 2255 Motion that he now believes he did not select the best option for himself, he has not demonstrated that had his attorney explained his options in further detail, he *would not have* pleaded guilty and *would have* gone to trial.  Monk only argued that he "believe[d] with a plea agreement [he] would have received a more favorable sentence."  (DN 64, at PageID # 240.)  This is insufficient to demonstrate prejudice.  Accordingly, the undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 3.

### e)      Ground 23

Monk also argued that McMahon failed to explain that Monk could preserve his right to challenge certain Fourth Amendment violations on appeal after entry of a guilty plea.  (*Id.* at 265.)  This is called a conditional guilty plea.  Fed. R. Crim. P. 11(a)(2).  However, a conditional plea may only be entered "[w]ith the consent of the court and the government . . . ."  *Id.*  Therefore, to prove he suffered prejudice on his ineffective assistance of counsel claim, Monk must demonstrate that McMahon could have successfully negotiated an agreement for a conditional plea with the United States.  *Moore v. Haas*, No. 2:13-cv-1225, 2013 U.S. Dist. LEXIS 154589, at *14-16 (E.D. Mich. Oct. 29, 2013) ("Petitioner was not prejudiced by defense counsel's failure to negotiate a conditional plea agreement that would have preserved his rights to appeal the denial of his motion to suppress, absent any showing that counsel could have successfully negotiated such plea agreement."); *United States v. Moya*, 676 F.3d 1211, at 1214 (10th Cir. 2012).  Monk's § 2255 Motion presents no support for the proposition that the United States would have consented to Monk's entry of a conditional plea.  Though Monk alleged in his § 2255 Motion that "the U.S. Attorney permits defendants to preserve the right to appeal various issues," Monk attached no

affidavit or policy or procedure suggesting this would have been an option in Monk's case.  (DN 64, at PageID # 265.)  That the United States would have consented is highly unlikely here given that it withdrew from all other plea negotiations because of Monk's violation of the Court's no-contact order.  (DN 95, at PageID # 707-08, 717-18; DN 79, at PageID # 394 n.1.)

Further, Monk again failed to argue or assert that if McMahon had informed him of the existence or option of a conditional plea, Monk would have insisted on entering one or going to trial instead of entering a non-conditional guilty plea.  Monk only alleged that he "never knowingly waived [his] rights to challenge the searches and seizures," which is not the measure of prejudice under *Strickland* and *Hill.*  (DN 64, at PageID # 265.)  Under these circumstances, Monk cannot demonstrate that he was prejudiced by any failure by McMahon to explain the possibility of a conditional plea.  Therefore, the undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 23.

### f)      Ground 4

Monk also argued that McMahon was ineffective in failing to explain the consequences of his guilty plea (Ground 4).[6]  Monk argued that while he was informed of the potential sentences and fines he would face, he did not understand any of the other consequences he might suffer if he pleaded guilty.  (*Id.* at 241.)  To the extent that Monk's § 2255 Motion stated that he was not advised of the "various consequences" and "other penalties" he might face, the undersigned finds that these allegations are too vague to constitute a valid ineffective assistance claim.  *See Elzy*, 205 F.3d at 886 (finding conclusory allegations insufficient to support ineffective assistance of counsel

---

[6] Monk's § 2255 Motion alleged that he "was not properly advised and counseled by this Court, the prosecution, and/or [his] attorney" about the consequences of his guilty plea.  (DN 64, at PageID # 241.) The undersigned will only address Monk's argument with respect to his attorney's conduct because the record otherwise demonstrates that the presiding judge fully explained to Monk the consequences of his guilty plea and the nature of an open plea.  (DN 56, at PageID # 207-09.)

claim).  Accordingly, the undersigned will only address Monk's arguments with respect to specific consequences he alleged McMahon did not discuss with him.    The only specific consequences Monk identified and alleged McMahon failed to discuss with him were restitution and conditions of supervised release.  With respect to these consequences, the undersigned finds that Monk has not demonstrated prejudice as Monk was fully informed by the judge at his change of plea hearing of the possibility of supervised release and restitution, and Monk chose to enter a guilty plea anyway.  (DN 56, at PageID # 201-05.)  If Monk had questions about those items when they arose at the change of plea hearing, he should have requested an opportunity to consult with McMahon. He did not do so.  Instead, when asked by the judge whether he understood that he could be subject to a term of supervised release and restitution, he responded, "Yes, sir." (*Id.* at 202-03, 205.)  This refutes any assertion by Monk that he would not have entered a guilty plea had he been properly advised of the consequences of the same because he was advised, even if not by McMahon, and entered a guilty plea nonetheless.  Accordingly, the undersigned will recommend Monk's § 2255 Motion be denied as to Ground 4.

### g)    Grounds 13-22, 24

Monk also argued that his counsel was ineffective in failing to file a motion to suppress on multiple bases.  (DN 64, at PageID # 252-64, 266.)  He argued in his post-hearing brief that these motions to suppress "could have changed the entire complexion of the case."  (DN 100, at PageID # 766.)  He asserted that he was "unaware of his legal options regarding [his] arrest," "had no way to discover them on [his] own," and "would not have pled guilty (or at least reserved [his] right to challenge those issues on appeal) if given the chance now."  (DN 64, at PageID # 252.)  Elsewhere, he asserted that had he "been aware that . . . a motion to suppress was available to him, [his] deliberative process . . . would have drastically changed."  (DN 83, at PageID # 447.)  In his initial,

*pro se* § 2255 Motion, Monk proffered several bases for the potential motion to suppress he believed McMahon was ineffective in failing to file, including Monk's lack of consent to the search of the motel room (Ground 14); the illegality of his arrest for a number of reasons (Grounds 15, 16, 17, 19); Monk's coerced consent to the search of his hotel room (Ground 18); and the illegal search of his cell phone (Ground 20, 21, 22).[7]  (DN 64, at PageID # 254-64.)  The undersigned held an evidentiary hearing on these claims and appointed Monk counsel for purposes of the hearing and any post-hearing briefing.  (DN 85, at PageID # 672-73, 675.)  In his post-hearing brief, filed by Monk's appointed counsel, Monk only argued that McMahon should have filed a motion to suppress on the basis of (1) Monk's unlawful and warrantless arrest; (2) violation of Monk's Sixth Amendment rights; and (3) coercive police activity during Monk's interview.  (DN 100, at PageID # 767-70.)  These arguments overlap in part, but not completely, with those raised in Monk's initial § 2255.  To the extent that Monk's post-hearing brief (DN 100) did not address certain arguments included in his initial § 2255 Motion and Monk's counsel did not elicit any testimony regarding those issues at the evidentiary hearing, the undersigned finds the same abandoned and will not address them here.[8]  This leaves only Monk's arguments in his post-hearing brief to be addressed.

As with all ineffective assistance claims, to prevail, Monk must demonstrate McMahon performed deficiently and that the deficient performance resulted in prejudice.  *Strickland*, 466 U.S. at 687.  An ineffective assistance claim can be based on a failure to file a meritorious motion

---

[7] Grounds 13 and 24 are simply summaries of Monk's arguments regarding McMahon's failure to file a motion to suppress and do not contain any independent arguments regarding why particular evidence should have been suppressed.  (DN 64, at PageID # 252-53, 266.)

[8] This includes Monk's arguments regarding the search of his cell phone (Grounds 20, 21, 22) and coerced consent and/or lack of consent to the search of his hotel room (Grounds 14 and 18).  The undersigned notes that both Monk's cell phone and his hotel room were searched pursuant to search warrants.  (DN 97, Def.'s Ex. 4.)  Accordingly, Monk's arguments regarding these searches would have been without merit as his § 2255 Motion did not argue that the warrants were unsupported by probable cause.  (DN 64, at PageID # 254, 259, 261-64.)

to suppress.  However, "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel . . . ." *Kimmelman*, 477 U.S. at 384.  "For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)).  The movant must demonstrate that counsel had no reasonable strategic rationale for not filing the motion.  *Id.* (citing *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011)).  Further, where the movant alleges that the basis for the motion to suppress arises from a violation of his rights under the Fourth Amendment, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman*, 477 U.S. at 375; *see also Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).  The undersigned will address each motion Monk argued McMahon was ineffective in failing to file below.

First, Monk argued that McMahon was ineffective in failing to file a motion to suppress on the basis that Monk's arrest was unlawful and violated his Fourth Amendment rights.  (DN 100, at PageID # 767.)  Monk was arrested for violating an emergency protection order ("EPO") and contributing to the delinquency of a minor.[9]  (DN 1, at PageID # 3.)  It is undisputed that Monk was arrested in his motel room, without a warrant.  (DN 95, at PageID # 701; DN 103, at PageID # 796.)  "[S]earches and seizures inside a home without a warrant are presumptively unreasonable" under the Fourth Amendment.  *Payton v. New York*, 445 U.S. 573, 586 (1980).  These protections extend to a hotel or motel room, where it has been held that an occupant has right to constitutional

---

[9] Though it appears Monk was ultimately charged in Indiana with felony child seduction and invasion of privacy, the record establishes that Monk was initially arrest for violating an emergency protection order and contributing to the delinquency of a minor.  (DN 97, Gov't's Ex. 5; DN 1, at PageID # 3.)

protection.  *See, e.g.*, *Stoner v. California*, 376 U.S. 483, 490 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); *United States v. Caldwell*, 518 F.3d 426, 429 (6th Cir. 2008) (noting that occupant of hotel room has a reasonable expectation of privacy in the hotel room such that a warrantless search of the same is "unreasonable unless it falls within an exception to the warrant requirement").  "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home" or hotel room.  *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).  Exigent circumstances exist "where (1) the officers involved were in hot pursuit of a fleeing suspect; (2) the suspect posed an immediate threat to arresting officers or to the public; and (3) immediate police action was necessary to prevent the destruction of vital evidence or to prevent the escape of a known criminal."  *Ingram v. City of Columbus,* 185 F.3d 579, 587 (6th Cir. 1999).  It is well-established that exigent circumstances should "rarely" justify the warrantless entry of a home "when there is probable cause to believe that only a minor offense . . . has been committed."  *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

Monk argued that the police lacked either probable cause or exigent circumstances to arrest him in his motel room, making his arrest an "unreasonable seizure" in violation of the Fourth Amendment.  (DN 100, at PageID # 768-79.)  As set forth in the Criminal Complaint for Monk's charges in this Court (DN 1) and the affidavit in support of the search warrant for Monk's hotel room (DN 97, Def.'s Ex. 4, at 2), the police officers who arrested Monk knew that (1) Jane Doe, a minor, had been reported missing; (2) Jane Doe's mother had reported that Jane Doe ran away from home; (3) Jane Doe's mother believed Jane Doe was possibly in the company of her step-father, Monk; (4) Louisville Police and Child Protective Services were investigating allegations of sexual abuse or misconduct between Monk and Jane Doe; (5) Jane Doe's mother had filed for and

received an EPO against Monk; (6) the EPO required Monk to have no contact with Jane Doe or her mother; (7) Jane Doe's mother believed Monk was staying in a hotel room in Southern Indiana; (8) Clarksville police had located a car registered to Monk at the Star Motel; and (9) the Star Motel advised police that Monk was staying in Room 115.  (DN 1, at PageID # 3; DN 97, Def.'s Ex. 4, at 2.)  When police arrived at the Star Motel and knocked on the door to Room 115, they then observed that (1) Monk answered the door in nothing but his underwear and appeared to have just awakened from sleep; (2) Jane Doe was also in the room; (3) it appeared both Monk and Jane Doe were staying in the room; and (4) it appeared both Monk and Jane Doe had been sharing the room's double-bed.  (*Id.*)  Monk neither presented nor elicited any testimony at the evidentiary hearing to contradict these facts.  Therefore, based on these facts, the undersigned finds that the police officers had probable cause to believe that Monk was contributing to the delinquency of a minor because Jane Doe had been reported missing and police had observed that Monk and Jane Doe had been living together.[10]  Given the existence of the EPO, the allegations of sexual abuse/misconduct, and their observation that Monk and Jane Doe were sharing a bed, the police also had reason to believe that there was a threat of harm to Jane Doe if the police waited to get a warrant and did not immediately arrest Monk and separate Monk and Jane Doe.  *See United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (holding that exigent circumstances existed to justify police officer's warrantless entry to free minor victim who had been kidnapped and sexually assaulted).  Accordingly, the police also had exigent circumstances to enter the hotel room and arrest Monk without a warrant.

---

[10] Ind. Code. § 35-46-1-8(a) defines "contributing to delinquency" as "knowingly or intentionally encourage[ing], aid[ing], induc[ing], or caus[ing] a child to commit an act of delinquency.  The offense is a Class A misdemeanor. Ind. Code. § 31-37-2-2 defines a "delinquent act" as "leav[ing] home or a specific location previously designated by the child's parent, guardian, or custodian . . . without permission of the parent, guardian, or custodian, who requests the child's return."

Monk argued that contributing to the delinquency of a minor is a "minor offense" for which a warrantless arrest within the confines of a home or hotel room should "rarely" be justified. (DN 100, at PageID # 769.) While the offense for which Monk was arrested was a misdemeanor, the *Welsh* case cited by Monk is distinguishable as the minor offense in that case was a "nonjailable traffic offense" and the threat of further injury to a minor victim was not present. *Welsh*, 466 U.S. at 742. Monk cited no other caselaw to suggest that the circumstances here did not justify his warrantless arrest. Therefore, the undersigned finds that Monk has not demonstrated that his Fourth Amendment claim regarding his unlawful arrest was "meritorious" as required by *Kimmelman*.[11] Accordingly, the undersigned will recommend his § 2255 Motion be denied as to his ineffective assistance claims regarding the failure to file a motion to suppress based on his unlawful arrest.

Second, Monk argued that McMahon should have filed a motion to suppress statements Monk made to police during an interview that occurred after his first appearance in court.[12] (DN 100, at PageID # 769.) Monk argued that Monk was not given an opportunity to call his lawyer before being questioned and that therefore his Sixth Amendment right to counsel was violated. (*Id.*) As Monk notes in his Motion, a defendant's Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). Therefore, "once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer v. Williams*, 430 U.S. 387, 401 (1977) (citing *Massiah v. United States*, 377 U.S. 201, 206

---

[11] Because the undersigned concluded that Monk was lawfully arrested on the charge of contributing to the delinquency of a minor, it is unnecessary for the undersigned to reach Monk's argument regarding the other charge of violation of an EPO.

[12] The undersigned will assume that Monk is correct regarding the timing of the interview and his first appearance in court. Monk's testimony at the evidentiary hearing was consistent with this sequence of events, and the United States made no argument otherwise. (DN 95, at PageID # 739-40.)

(1964)).  However, as Monk failed to cite or otherwise acknowledge in his § 2255 Motion, a defendant may waive these rights, and the Supreme Court has held that a defendant "who is admonished the warnings prescribed by this Court in *Miranda v. Arizona* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

Here, the testimony at the evidentiary hearing conclusively established that Monk was mirandized and executed both a written and verbal waiver of his rights prior to the interrogation at issue, though no Party introduced either the recorded interrogation or the written waiver into the record.  (DN 95, at PageID # 702-03, 732.)  Regarding speaking with a lawyer prior to the interrogation, Monk affirmed that he did not "have an opportunity before [he] spoke to the detective to call a lawyer to see whether [the lawyer] would advise [him] about making a statement"; he did not testify that he requested and was denied such an opportunity.  He likewise did not testify that he was not given *Miranda* warnings or that he requested a lawyer at any point before or during the interrogation.  (*Id.* at 740.)  He only testified that he "d[idn't] actually know" why he made a statement to police.  (*Id.*)  Accordingly, the undersigned finds that Monk's Sixth Amendment right to counsel was not violated.  Monk has, therefore, failed to demonstrate that McMahon's decision not to file a motion to suppress on this basis was unreasonable because it is not unreasonable to fail to raise "an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Further, Monk has not demonstrated prejudice because he has not demonstrated the outcome of the proceedings would have been any different had McMahon filed the motion to suppress given the near-certainty it would have been unsuccessful.  For these reasons, the

undersigned will recommend Monk's § 2255 Motion be denied as to his claims regarding McMahon's failure to file a motion to suppress based on a violation of his Sixth Amendment right to counsel.

Finally, Monk argued that McMahon should have filed a motion to suppress his confession because he was in extreme pain throughout his interview with police, suggesting that coercive police activity occurred to merit suppression of his confession.  (DN 100, at PageID # 769-70.) The Sixth Circuit has held that in considering whether a confession was voluntary or coerced, the court should consider whether "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).  The voluntariness of a defendant's confession is assessed by examining the totality of the circumstances at the time the person made the statement.  *United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)).  The totality of the circumstances can include such factors as "age, education, and intelligence of the defendant; whether the defendant has been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir.2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

Here, Monk claims that the fact that he was interrogated while in "extreme pain" amounted to coercion.  Monk testified that prior to his court appearance, his wife and her son attacked him in the hallway of the courthouse, cracking some ribs.  (DN 95, at PageID # 740.)  He indicated that he had not had an opportunity to get medical treatment prior to being interviewed by police and

that he was in "extreme pain." (*Id.* at 741.)  Monk offered no other testimony or other security footage or documentation to bolster his claim.  Nor did he testify that he discussed this incident with McMahon or told McMahon of the pain he was in during the interrogation.  Monk did testify that he mentioned he was in pain during the interview.  (*Id.*)  McMahon, who had reviewed the recorded interview, testified that nothing about the recording led McMahon to believe that Monk was in serious physical pain or being coerced in any way.  (*Id.* at 733.)  McMahon only testified that Monk complained during the interview about an issue with his back, but McMahon also testified that he believed if Monk "were to testify about a back ailment that made something coercive or that he couldn't continue knowingly or what have you," that Monk could be impeached with his actions in the pornographic video because of the "physical activity he was undergoing." (*Id.*)  McMahon further testified that the interrogation as a whole was "conversational in tone" and that the law enforcement officers repeatedly asked Monk if he was comfortable.  (*Id.* at 732-33.) McMahon testified, "It was a very kind interrogation as far as the ones that I have seen in state court and other cases that I have had." (*Id.* at 733.)

Under these circumstances, the undersigned finds that Monk has not demonstrated that McMahon's failure to file a motion to suppress was unreasonable.  The undersigned finds McMahon's testimony regarding the overall tenor of the interrogation more credible than Monk's testimony given the lack of documentation of any injuries Monk may have received and lack of documentation regarding the underlying attack.  Further, given the circumstances, McMahon could have concluded that a motion to suppress on that basis would have been unsuccessful and that his time would be better spent in plea negotiations, as McMahon testified elsewhere was his focus for Monk.   Accordingly, Monk has not overcome the strong presumption that McMahon's

representation was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The undersigned also finds that Monk has not demonstrated prejudice with respect to the failure to file the motion to suppress because he has not demonstrated that but for McMahon's failure to file a motion to suppress based on police coercion, the results of the proceedings would have been different.  To prove prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).  Monk must prove that there exists a reasonable probability the results of the proceeding would have been different.  *Id.*  Even assuming Monk's interview/confession had been excluded, the search warrant for the hotel room that uncovered the pornographic video was executed the same day as Monk's interrogation and was not issued on the basis of Monk's confession.  Further, the United States would have still been able to rely on the testimony of Jane Doe, who disclosed in her interview that she and Monk had made a video tape of a sexual encounter.  (DN 1, at PageID # 3.)  Under these circumstances, Monk has not demonstrated a reasonable probability either that suppression of his confession would have occurred or that if it had occurred, the result of the proceeding would have been any different.  Therefore, McMahon's decision not to file a motion to suppress Monk's confession on the basis of coercion did not constitute ineffective assistance of counsel.

Accordingly, the undersigned will recommend that Monk's § 2255 Motion be denied as to Grounds 13-22, and 24.

### 4.      Grounds Related to Post-Plea Events and Sentencing (Grounds 42-51)

Monk's § 2255 Motion also raised a number of grounds related to post-plea events, including his sentencing, restitution award, and supervised release conditions.  The undersigned will address each ground separately below.

#### a)      Grounds 42, 44, 47, 48, 50

As an initial matter, the undersigned finds that Grounds 42, 44, 47, 48, and 50 have been procedurally defaulted because Monk failed to raise these issues on direct appeal.  Here again, Monk's only attempt to show cause is his argument that McMahon's failure to file a direct appeal constituted ineffective assistance of counsel.  The undersigned has already rejected Monk's ineffective assistance of counsel claim on this basis above. Therefore, the undersigned finds Monk has failed to show cause to overcome the procedural default and will recommend Monk's § 2255 Motion be denied as to Grounds 42, 44, 47, 48, and 50.

#### b)      Ground 43

Monk argued that McMahon was ineffective in failing to bring to the Court's attention the fact that Monk did not receive his copy of the presentence investigation report ("PSR") until the day of sentencing and in failing to educate Monk on the benefits Monk was giving up by not insisting his sentencing be delayed so he could personally review and comment on the PSR.  (DN 64, at PageID # 285.)  Monk alleged in Grounds 42 and 43 of his § 2255 Motion that he did not receive a copy of his PSR until the date of sentencing and that if he had had an opportunity to review it at an earlier date, he would have challenged the sentencing recommendation therein.  (*Id.* at 284-85.)  The undersigned granted Monk an evidentiary hearing on this issue.  (DN 85, at PageID # 673-74.)

As with all ineffective assistance claims, Monk must demonstrate both that McMahon's performance was deficient and that Monk suffered prejudice as a result. *Strickland*, 466 U.S. at 687.  However, in the context of alleged ineffective assistance of counsel regarding sentencing, to demonstrate prejudice, a defendant must show "a reasonable probability that, but for counsel's errors, [the defendant's] sentence would have been different. *Weinberger*, 268 F.3d at 352 ; s*ee also Glover v. United States,* 531 U.S. 198, 203-04 (2001) (noting that any amount of additional "actual jail time has Sixth Amendment significance"); *Spencer v. Booker*, 254 Fed. App'x 520, 525 (6th Cir. 2007) ("Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney.").  However, a defendant cannot rely on pure speculation that his sentence would have been different but, instead, must affirmatively prove the same. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) ("[O]ne is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different, an insufficient basis for a successful claim of prejudice.").

At the evidentiary hearing, McMahon testified that he does not send copies of PSRs to his clients due to concerns about confidentiality.  (DN 95, at PageID # 728.)  He further testified that upon reviewing the PSR, he believed it was largely appropriate, but he did file objections to it. (*Id.* at 728-29.)  Additionally, McMahon testified that he discussed the PSR generally and reviewed the PSR with Monk on the day of sentencing.  (*Id.* at 728, 730.)  At the sentencing hearing, when the judge asked Monk whether he had received the PSR and reviewed it with counsel, Monk answered affirmatively.  (DN 76, at PageID # 333.)  Monk's testimony at the sentencing hearing was as follows:

The Court:              Mr. Monk, did you review the presentence report in consultation with your attorney?

45

| Monk: | Yes, I have. |
|---|---|
| The Court: | Okay.  And you are familiar with the items that Mr. McMahon says he wants to discuss with the court regarding sentencing issues, correct? |
| Monk: | Yes, Your Honor. |
| The Court: | All right.  What I'm asking you is, is there anything that you noticed in this presentence report that you disagree with other than in addition to anything Mr. McMahon said?  Is there anything else in here? |
| Monk: | No, Your Honor. |
| The Court: | No.  Okay.  So as far as you're concerned, it's accurate as far as it goes with respect to all other issues except those that Mr. McMahon wishes to bring up; is that correct? |
| Monk: | Yes, sir. |

(DN 76, at PageID # 333.)

Monk did not expressly address this issue in his post-hearing briefing.  (DNs 100, 104.) The United States argued, based on the testimony excerpted above, that nothing in the record of the underlying criminal proceedings or this post-conviction litigation supported Monk's claim of ineffective assistance as to his access to the PSR.  (DN 103, at PageID # 797-98.)

Pursuant to Fed. R. Civ. P. 32(e)(2), the PSR must be disclosed to the defendant and his attorney at least thirty-five days before sentencing. Fed. R. Civ. P. 32(e)(2).  The Sixth Circuit holds that where a defendant or his counsel did not object to the timing of a PSR or ask that a sentencing hearing be continued due to delayed production of a PSR, the defendant waives any objections that he or she might have had.  *United States v. Burnette*, 21 Fed. App'x 382, 393 (6th Cir. 2001) ("Furthermore, because counsel for the defendant did not object to the timing of the revised report or ask that the sentencing hearing be continued, [defendant] waived any objections

he might have had pursuant to [precursor to Rule 32(e)(2)].") (citing *United States v. Jones*, 80 F.3d 436, 438 (10th Cir. 1996)).  While Monk conclusively established at the evidentiary hearing that he did not receive the PSR within the time period prescribed by Rule 32(e), he also established that he did receive the report prior to sentencing and review it with his attorney.  Further, his attorney received it in advance of sentencing, reviewed it, and lodged objections to it.  At the sentencing hearing, Monk testified that the report was accurate as to all issues except those noted by his attorney.  (DN 76, at PageID # 333.)

Though Monk generally contends in his § 2255 Motion that "errors in the text [of the PSR] negatively affected his sentence," even now after the passage of time he claims he did not receive the benefit of before the sentencing hearing, he does not specify what those errors are.  Nor does he specifically allege how the "errors" affected the sentence he received.  Monk's 240-month sentence was already a ten-year downward departure from the recommended guideline range of 360 months to life.  (DN 37, at PageID # 110-11; DN 76, at PageID # 361.)  Neither Monk nor his counsel made any specific argument regarding how Monk's earlier receipt of the PSR would have resulted in yet a lower sentence.  Such proof is required to demonstrate prejudice.  *Spencer*, 254 Fed. App'x at 525; *Baze*, F.3d at 322.  In light of the conclusory nature of Monk's allegations and the testimony at the evidentiary hearing, the undersigned finds that Monk has not proven prejudice with respect to this issue.  Because the undersigned has found that Monk failed to demonstrate prejudice, the undersigned declines to address whether McMahon's performance was deficient.  *Sowell*, 372 F.3d at 838.  Accordingly, the undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 43.

c)      **Ground 45**

Monk also argued that McMahon was ineffective for failing to argue that he was improperly enhanced two offense levels for obstruction of justice under U.S.S.G. § 3C1.1  (DN 64, at PageID # 287.)  To succeed on this claim, Monk must demonstrate that McMahon performed deficiently and that he was prejudiced as a result in that there exists a reasonable probability that but for McMahon's error, Monk's sentence would have been different.  *Strickland*, 466 U.S. at 687; *Weinberger*, 268 F.3d at 352.  McMahon did lodge an objection to the enhancement both with the Supervising Probation Office prior to the preparation of a final PSR (DN 37-1, at PageID # 116) and at sentencing (DN 76, at PageID # 328-29, 335-43).  However, the sentencing judge overruled McMahon's objection, stating that "if there ever was a case in which there was an attempt to obstruct the administration of justice, this is it."  (DN 76, at PageID # 343.)  Monk argued in his § 2255 Motion that McMahon was ineffective for failing to point out that even if Jane Doe had testified as Monk solicited her to, the "alleged solicited behavior would not have changed the issue of [his] guilt."  (DN 64, at PageID # 287.)  Whether his attempts would have ultimately been successful or not, Monk still attempted to influence witness testimony.  Monk presented no authority to support any argument that the application of U.S.S.G. § 3C1.1 requires conduct that would have "successfully" obstructed justice, nor could he as the text of the guideline itself states that the defendant should be increased two offense levels if the defendant "willfully obstructed or impeded, *or attempted to obstruct or impede*, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." U.S.S.G. § 3C1.1 (2013) (emphasis added).  It is well-established that counsel has no duty to assert a legally baseless claim, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective when he does not raise such a claim.  *Greer*, 264 F.3d at 676.  Therefore, the

undersigned finds it was not deficient performance for McMahon to not raise the argument now put forward by Monk.  As the undersigned has found McMahon did not perform deficiently, the undersigned declines to address whether Monk was prejudiced.  *Sowell*, 372 F.3d at 838. The undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 45.

### d)      Ground 46

Monk also argued that McMahon was ineffective in failing to retain a mitigation expert to prepare both counsel and Monk for sentencing.  (DN 64, at PageID # 288.)  Specifically, Monk alleged that he could have received a lower sentence, his attorney was not a "recognized sentencing expert," Monk was unfamiliar with the Federal Sentencing Guidelines," and his attorney failed to consult with anyone with specific expertise for those convicted of sexual offenses. (*Id.*)  Again, Monk must prove both that McMahon performed deficiently and that Monk suffered prejudice as a result.  *Strickland*, 466 U.S. at 687; *Weinberger*, 267 F.3d at 352.  However, Monk's § 2255 Motion neither specified what mitigating evidence McMahon should have presented that he did not, nor what a mitigation expert would have added to Monk's defense.  Indeed, Monk provides no authority or real argument whatsoever to suggest that it was unreasonable for McMahon to fail to procure a mitigation expert in this case.  Mitigation experts are often employed in the context of the penalty phase of a capital criminal trial as defense counsel is generally under an affirmative obligation to investigate mitigating evidence in such a case.  *See* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 10.7(A), (A)(2) (2003) (describing counsel's duty to conduct "thorough and independent" investigation regarding penalty phase); *id.* at 10.11(A) ("[C]ounsel at every stage of the case have a continuing duty to investigate issues bearing upon penalty and to seek information that supports mitigation or rebuts the prosecution's case in aggravation.").  In such a case, counsel's failure to reasonably investigate

defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel.  *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003).

However, Monk presented no authority suggesting it was deficient performance for McMahon to fail to procure a mitigation expert in this, non-capital, case.  Nor did Monk argue that McMahon failed to investigate mitigating circumstances or Monk's background.  To the extent Monk simply meant to argue that McMahon failed to present mitigation evidence at sentencing, the record contradicts this claim.  Specifically, the sentencing transcript demonstrates that McMahon did raise several mitigating issues at sentencing, including abuse Monk suffered as a child, Monk's age and relative life expectancy compared to his potential sentence, his physical health, and his history of substance and alcohol abuse.  (DN 76, at PageID # 331-32, 362-365.)  The sentencing transcript also demonstrates that McMahon's arguments regarding Monk's background and characteristics, as well as regarding the nature of the offense, factored into the sentence Monk received.  The sentencing judge stated on the record that the 240-month sentence imposed—a ten-year departure from the 360-month to life guideline range—was due to the nature and circumstances of the offense, the characteristics of the victim, *and the characteristics of the defendant*.  (*Id.* at 361.)  Accordingly, the undersigned finds that Monk has not demonstrated McMahon performed below an objectively reasonable level with respect to the investigation and presentation of mitigating evidence.

Monk likewise has not demonstrated prejudice.  Specifically, Monk has not demonstrated a reasonable probability that his sentence would have been different had McMahon either retained a mitigation expert or present additional—though unidentified by Monk—mitigating evidence at sentencing.  He simply asserted, "I COULD have received a lower sentence."  (DN 64, at PageID # 288.)  The possibility of a lower sentence does not automatically equate to a reasonable

probability of one. The undersigned will, therefore, recommend that Monk's § 2255 Motion be denied as to Ground 46.

### e)      Ground 49

Monk further argued that McMahon was ineffective in failing to challenge his supervised release conditions, their unsuitability to Monk, and the Court's failure to justify each of the conditions on the record. (*Id.* at 291.) Monk specifically argued that his attorney was ineffective for failing to object to any "'traditional' sex offender conditions" because the facts of Monk's case and his personal characteristics made the same inapplicable. (*Id.*) Monk was sentenced to a twelve year term of supervised release, and the Court imposed the "standard conditions adopted by the court, special conditions, . . . includ[ing] specific sex offender conditions, drug aftercare treatment, and no contact with the victim of th[e] crime." (DN 76, at PageID # 374.)

Supervised release conditions fall into two categories: mandatory conditions and non-mandatory, or "special," conditions.   18 U.S.C § 3583(d) explicitly sets forth a number of conditions that Court "shall order, as an explicit condition of supervised release," including that the defendant not commit other crimes, not unlawfully possess a controlled substance, *etc.*   18 U.S.C. § 3583(d) (2014).   The statute also provides that the Court may order as a condition of supervised release any condition set forth in 18 U.S.C. § 3563(b) and "any other condition it considers to be appropriate" if three requirements are met.   *Id.*   Those requirements are: (1) that the condition be reasonably related to several specifically enumerated sentencing factors;[13] (2) involve "no greater deprivation of liberty than is reasonably necessary" to accomplish several

---

[13] Those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D) (2014).

sentencing purposes;[14] (3) and be "consistent with any pertinent policy statements issued by the Sentencing Commission . . . ." *Id.*  While generally a sentencing court must "state in open court the reasons for its imposition of the particular sentence," including any conditions of supervised release, this requirement applies only to non-mandatory, special conditions.  18 U.S.C.  3553(c); *United States v. Carter*, 463 F.3d 526, 528-29, 529 n.2 (6th Cir. 2006).  Further, the Sixth Circuit has held that "consideration of the [18 U.S.C.] § 3553(a) factors sufficient to justify a term of incarceration as procedurally reasonable can also demonstrate that the imposition of special conditions is procedurally reasonable." *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

Though Monk's § 2255 Motion referenced the general "unsuitability" of the supervised release conditions imposed in his case, the only conditions he references by name are the "'traditional' sex offender conditions."  (DN 64, at PageID # 291.)  He does not reference by number any particular condition or conditions. A review of Monk's arguments in Ground 48—which the undersigned recommended be denied above for failure to raise the same on direct appeal—is instructive as to Monk's argument in Ground 49.  In Ground 48, Monk argued that his supervised release conditions were "unduly onerous" and "not particularly suited to [his] situation."  (*Id.* at 290.)  He argued that his case was "much different than the usual offender convicted of sexual offenses" and that those differences should have been considered when setting his supervised release conditions.  (*Id.*)  While he did later broadly assert that "[v]arious other conditions are similarly inappropriate and inapplicable," his narrative regarding his view of the circumstances surrounding the offense make clear that Monk is specifically concerned with the conditions imposed as a result of his crimes being sex offenses rather than the general, standard

---

[14] Those purposes, which overlap with the sentencing factors described in Footnote 13, are "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(B)-(D).

conditions that the Court typically imposes on all offenders, regardless of their crime. Accordingly, the undersigned will construe Monk's ineffective assistance claim regarding McMahon's failure to challenge the unsuitability of the supervised release conditions imposed to refer only to special Conditions 15-18, which facially relate to the sex offenses to which Monk pleaded guilty.[15]  Those conditions provided as follows:

> (15)   The defendant shall participate in a sex offender counseling program approved by the U.S. Probation Office, and shall abide by the policies of the program. The defendant shall contribute to the Probation Office's cost of services rendered based upon his/her ability to pay as reflected in his/her monthly cash flow as it relates to the court-approved sliding fee scale.

> (16)   The defendant shall comply with any sex offender registration laws of any state in which he/she resides, is employed, carries on a vocation, or is a student.

> (17)   The defendant shall not be employed in any capacity that may cause the defendant to come in direct contact with children under the age of 18, except under circumstances approved in advance by the supervising probation officer. The defendant shall not participate in any volunteer activity that may cause the defendant to come into direct contact with children under the age of 18, except under circumstances approved in advance by the defendant's probation officer.

> (18)   The defendant shall have no direct contact with any children under the age of 18 unless accompanied by and supervised by an adult who has been approved in advance by the sex offender treatment counselor and the supervising probation officer. The defendant shall immediately report any

---

[15] The undersigned does not include the requirement that Monk comply with the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, *et seq.*, in this list because the same is a mandatory condition under 18 U.S.C. § 3583(d).  Therefore, the Court was required to impose it given the crimes to which Monk pleaded guilty.  *See* 42 U.S.C. § 16911(1) (2014) (defining "sex offender" as an individual convicted of a "sex offense"); *id.* at § 16911(5)(A)(iii) (defining a "sex offense" to include a federal offense under Title 18, Chapters 110 and 117); 42 U.S.C. § 16913 (2014) (requiring a sex offender to register and keep the registration current).  The undersigned likewise does not include Condition 19—which required Monk to submit his person, property, house residence, vehicles, papers, computers, and other data storage devices to search by his supervising probation officer under certain circumstances—because as Monk was required to register as a sex offender, the Court was statutorily permitted to impose the search condition.  18 U.S.C. § 3583(d) ("The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.").

> unauthorized contact with children to the sex offender treatment counselor
> and to the probation officer.

(DN 45, at PageID # 163.)

Monk claimed that McMahon was ineffective in failing to object that the reasons for imposing Conditions 15-18 were not individually determined on the record.  As noted above, the reasons stated by the sentencing judge in support of the term of imprisonment can also support the imposition of special supervised release conditions.  *Zobel*, 696 F.3d at 572.  Here, the sentencing judge noted in support of the 240-month sentence of incarceration that Monk manipulated the victim, Jane Doe, in this case, with whom he had a familial relationship, and the effect this conduct had on Jane Doe.  (DN 76, at PageID # 372-73.)  The sentencing judge also cited to the seriousness of the offense, and the conduct underlying the offense was discussed at length during the sentencing hearing, including discussion of the film produced by Monk and the text messages and pictures exchanged between Monk and Jane Doe.  (*Id.* at 372.)  In light of the charges to which Monk pleaded guilty, enticement and production of child pornography, the undersigned finds this to be a sufficient rationale to satisfy the requirement that the court state its reasons on the record for imposing the special supervised release conditions.  Because the sentencing judge provided a sufficient rationale on the record for imposing Conditions 15-18, it was not error for McMahon not to object that the conditions were not individually determined on the record.  Therefore, Monk has not demonstrated McMahon's performance was deficient.  Further, Monk has not proven prejudice because he has not proven a reasonable probability exists that if McMahon had objected, the Court would not have imposed Conditions 15-18.  Accordingly, the undersigned finds Monk's ineffective assistance claim that McMahon failed to object to the Court's "failure" to individually determine Monk's supervised release conditions on the record to be without merit.

Monk also claimed McMahon was ineffective in failing to object that Conditions 15-18 were not appropriate given his personal circumstances.  Again, Conditions 15-18 were special conditions, and to impose a special condition of supervised release, the condition must (1) be reasonably related to several factors, including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary to deter criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with any needed medical or other correctional treatment; and (3) be consistent with the policy statements of the Sentencing Commission.  18 U.S.C. §§ 3583(d); 3553(a)(2)(B)-(D).  An examination of each challenged condition with respect to these three factors demonstrates that the conditions were appropriate in Monk's case.

Condition 15 required Monk to participate in a sex offender counseling program approved by U.S. Probation.  (DN 45, at Page ID # 163.)  The undersigned finds this condition reasonably related to the nature of Monk's offenses of conviction—production of child pornography and enticement.  The fact that both offenses involved a minor victim suggests a need for post-release monitoring.  The undersigned further finds that the condition is the least restrictive deprivation of liberty to deter Monk, protect the public, and assist with Monk's correctional treatment.  Monk presented no argument or authority to support that proposition that this condition was a more restrictive deprivation than necessary.  Finally, Condition 15 is consistent with the policy statements of the sentencing commission.  U.S. Sentencing Guidelines Manual § 5D1.3(d)(7)(A) (U.S. Sentencing Comm'n 2013) (recommending that an individual convicted of a sex offense be required to "participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders"); *id* at § 5D1.3(d)(5) (recommending that "[i]f he court has reason to believe that the defendant is in need of psychological or psychiatric treatment -- a

condition requiring that the defendant participate in a mental health program approved by the United States Probation Office.").  Accordingly, the undersigned finds that the imposition of Condition 15 was appropriate and consistent with the requirements of 18 U.S.C. § 3583(d).

Condition 16 required Monk to comply with the sex offender registration laws of any state where he resides, works, or studies.  (DN 45, at PageID # 163.)  Condition 16 is related to the nature of Monk's offense because he pleaded guilty to the sex offenses of production of child pornography and enticement.  The undersigned observes that Monk might have a duty to register under state law given these charges independent of any obligation this Court imposed upon him to do so.  *See* KRS § 17.510(2) (requiring "any person who has been convicted in . . . a court of the United States . . . of a sex crime or criminal offense against a victim who is a minor and who has been notified of the duty to register by that state, territory, or court . . . shall comply with the registration requirement of this section . . .").  Therefore, the Court finds the condition to be no greater than necessary a deprivation on Monk's liberty to ensure the protection of the public.  Monk has also provided no authority to suggest this condition is inconsistent with the policy statements of the Sentencing Commission.  Accordingly, the undersigned finds that the imposition of Condition 16 was appropriate and consistent with the requirements of 18 U.S.C. § 3583(d).

Condition 17 required Monk to avoid employment or volunteer opportunities that would cause him to come into direct contact with children under 18, except as approved in advance by his probation officer.  (DN 45, at PageID # 163.)  This condition is reasonably related to the nature and circumstances of Monk's crimes—production of child pornography and enticement—and reasonably related to the need for the sentence imposed to protect the public from further crimes by the defendant because it isolates Monk from potential minor victims.  Because the condition grants Monk's supervising probation officer the ability to approve employment or volunteer

opportunities in advance where appropriate, the condition also constitutes no greater deprivation of liberty than reasonably necessary.  Finally, the condition is consistent with the existing policy statements of the Sentencing Commission because it is focused on minimizing Monk's contact with minors to protect the public.  *See* U.S. Sentencing Guidelines Manual § 5B1.3(e)(4) ("Occupational restrictions may be imposed as a condition of probation."); *id.* at § 5F1.5. Accordingly, the undersigned finds the imposition of Condition 17 was appropriate and consistent with the requirements of 18 U.S.C. § 3583(d).

Condition 18 required Monk to have no contact with children under 18 unless supervised by an adult approved in advance by the sex offender treatment counselor and the supervising probation officer.  (DN 45, at PageID # 163.)  Condition 18 is subject to much of the same analysis as Condition 17 above in that it is again related to the offenses with which Monk was charged, related to the need for the sentence imposed to protect the public by keeping Monk from having contact with minors, and contains a discretionary component that keeps the condition from being a greater deprivation of liberty than necessary.  Further, Monk provided no evidence or argument that the condition is inconsistent with any policy statement issues by the Sentencing Commission. Accordingly, the undersigned finds the imposition of Condition 18 was appropriate and consistent with the requirements of 18 U.S.C § 3583(d).

As the undersigned has found the imposition of Conditions 15-18 to be substantively proper, it was not deficient performance for McMahon to fail to object to the imposition of these conditions.  Likewise, because the conditions were appropriate to Monk and imposed pursuant to the statutory requirements for doing so, Monk has not proven prejudice because he has not shown a reasonable probability the result would have been different if McMahon had objected.  Therefore, the undersigned will recommend Monk's § 2255 Motion be denied as to Ground 49.

### f)      **Ground 51**

Finally, Monk argued that his attorney was ineffective in failing to challenge the restitution awarded by the Court.  (DN 64, at PageID # 293-94.)  As an initial matter, Monk was advised during his change of plea hearing that the Court could consider an award of restitution in this matter prior to entering his guilty plea.  (DN 56, at PageID # 203-04.)  When asked by the judge if he understood that, Monk replied, "Yes, sir."  (*Id.* at 205.)  Monk then proceeded to enter his guilty plea despite having been advised of the possibility of restitution.

Under 18 U.S.C. § 3663, the Court may award restitution "when sentencing a defendant convicted of an offense under" title 18 of the United States Code.  18 U.S.C. § 3663 (2014).  Monk pleaded guilty to violations of 18 U.S.C. § 2422(b) and 18 U.S.C. § 2251(a) and (e), giving the Court the ability to award restitution.  18 U.S.C. § 3663(B)(i)(I)-(II) provides that the court should consider "the amount of the loss sustained by each victim as a result of the offense" and "the financial resources of the defendant, the financial needs and earning ability of the defendant, and the defendant's dependents, and such other factors as the court deems appropriate" in issuing an award of restitution.  A review of the sentencing transcript indicates that the sentencing judge appropriately considered both factors, noting that the restitution award was comprised of medical expenses incurred by the victim and that those expenses appeared to be "directly related" to Monk's crimes.  (DN 76, at PageID # 376.)  The sentencing judge had noted earlier in the sentencing hearing that Jane Doe had "obviously been seriously affected by" Monk's conduct.  (*Id.* at 372.)  Further, the sentencing judge then declined to impose a fine and the other costs of incarceration and supervision due to Monk's inability to pay, demonstrating that the judge considered Monk's financial condition.  (*Id.* at 376.)  Under these circumstances, the undersigned finds that it was not deficient performance for McMahon to fail to object because the award of

restitution was within the sentencing judge's statutory authority and discretion. The undersigned also finds that Monk has not proven prejudice because he has not demonstrated a reasonable probability that the outcome would have been different had McMahon objected. Accordingly, the undersigned will recommend that Monk's § 2255 Motion be denied as to Ground 51.

### 5. General Ineffective Assistance of Counsel (Grounds 5 and 52)

Monk also argued that cumulatively, the errors in his case and the "gross misadvice" of his attorney entitle him to relief, even if no single error did individually, because "they call into question the fairness of the various legal proceedings." (DN 64, at PageID # 242, 295.) However, the undersigned has failed to find even one instance of ineffective assistance of counsel among Monk's other claims. Monk identified no independent errors except for those already the subject of separate Grounds in his § 2255 Motion. Without any underlying errors upon which to challenge the fairness of the proceedings, Monk's general ineffective assistance of counsel claims likewise fail. Accordingly, the undersigned recommends that Monk's § 2255 Motion be denied as to Grounds 5 and 52.

### C. Certificate of Appealability

The final issue is whether Monk is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the fifty-two claims raised in his petition. An appeal from a denial of a § 2255 motion may not proceed unless a judge issues a COA for the claim. 28 U.S.C. § 2253(c)(1)(B) (2017). To obtain a COA when the Court rejects a defendant's claim on the merits, the defendant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The defendant need not demonstrate the claim will prevail on the merits; he or she need only demonstrate that the issues he or she seeks to appeal are deserving of further proceedings or

debatable among jurists of reason. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)); *Slack*, 529 U.S. at 483-84. To obtain a COA when the Court rejects a claim on procedural grounds, the defendant must demonstrate (1) that "jurists of reason would find it debatable whether the [§ 2255 motion] states a valid claim of the denial of a constitutional right" and (2) that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478, 484. The Court need not conduct the two-pronged inquiry in the order identified or even address both parts if the movant makes an insufficient showing on one part. *Id.* at 485. The undersigned will separately address whether Monk has made the requisite showing for a COA on any of his fifty-two claims.

### 1. Grounds 1 and 2

In Grounds 1 and 2, Monk argued that McMahon rendered ineffective assistance of counsel in disregarding Monk's specific instructions to appeal and/or in failing to consult with Monk regarding an appeal. (DN 64, PageID # 238-39.) The undersigned recommended denying this claim on the merits because Monk neither established that McMahon disregarded his specific instructions to appeal nor that McMahon performed deficiently with respect to consulting with Monk regarding an appeal. Further, the undersigned found that Monk had not demonstrated prejudice with respect to his claim that McMahon failed to consult with him regarding an appeal. Given the highly factual nature of this inquiry and the highly deferential standard of review applicable to McMahon's actions, the undersigned finds that reasonable jurists would not find this recommendation debatable or wrong. Therefore, the undersigned recommends a COA be denied as to Grounds 1 and 2 of Monk's § 2255 Motion.

### 2.    Grounds 9, 25, 27, 29, 31, 33, 34, 36, 38, 40, 42, 44, 47, 48, 50

The undersigned recommended denying these claims as procedurally defaulted given that Monk failed to raise these issues on direct appeal and failed to show cause or prejudice for the default.[16]  Monk's only attempt to show cause was to allege the failure to file a direct appeal was the result of ineffective assistance of counsel, a claim the undersigned separately recommended denying.  As Monk did not show cause for his default, the undersigned finds that a plain procedural bar was present, and therefore, jurists of reason would not find the undersigned's procedural recommendation incorrect.  *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").  Accordingly, the undersigned recommends that a COA be denied as to Grounds 9, 25, 27, 29, 31, 33, 34, 36, 38, 40, 42, 44, 47, 48, and 50 of Monk's § 2255 Motion.

### 3.    Grounds 8-10, 25-32, 34-41

The undersigned recommended denying these claims because they cannot be brought in this proceeding.  The undersigned found that these claims related to pre-plea constitutional deprivations or issues that should have been raised pre-plea that were waived by Monk's entry of a guilty plea; therefore, to the extent that Monk did not link his ineffective assistance of counsel claims regarding these deprivations to the voluntary and intelligent nature of his guilty plea, Monk could not bring those claims in this proceeding.  The undersigned finds the application of the Supreme Court's rule in *Tollett* to be a plain procedural bar and that jurists of reason would not

---

[16] The undersigned will address Claims 9, 25, 27, 29, 31, 34, 36, 38, and 40 both here and in § II(C)(3) below because the undersigned found those claims to be both procedurally defaulted and subject to waiver under *Tollett*.  Therefore, the undersigned will assess the propriety of a COA as to each potential ground for decision.

disagree with the undersigned's recommendation.  Accordingly, the undersigned recommends that a COA be denied as to Grounds -10, 25-32, 34-41 of Monk's § 2255 Motion.

### 4.      Grounds 6 and 7

In Grounds 6 and 7, Monk argued that McMahon's assistance was ineffective because McMahon failed to fulfill his discovery obligations and discuss possible defenses with Monk.  (DN 64, at PageID # 243-46.)   The undersigned found that Monk had neither demonstrated that McMahon's investigation was unreasonable in light of all the circumstances or that McMahon unreasonably failed to discuss with Monk or discover "viable defenses."  The undersigned further found Monk had not demonstrated prejudice as he had not asserted that if properly advised, he would have forgone a guilty plea and gone to trial.  Given the highly deferential standard applicable to review of McMahon's actions, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Grounds 6 and 7.

### 5.      Grounds 11 and 12

In Grounds 11 and 12, Monk argued that McMahon's failure to explain the possibility of a formal plea agreement or to negotiate a plea argument constituted ineffective assistance.  (DN 64, at PageID # 250-51.)  The undersigned found that McMahon did discuss the possibility of a plea agreement in writing and did attempt to negotiate a plea agreement with the United States, but his efforts were stymied by Monk's violation of the Court's no-contact order.  The undersigned further found that Monk had made insufficient allegations to demonstrate prejudice.  As with Grounds 6 and 7 above, given the highly deferential standard applicable to review of McMahon's actions and given the undersigned's factual findings, the undersigned finds that reasonable jurists would not

find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Grounds 11 and 12.

### 6.      Ground 3

In Ground 3, Monk argued that McMahon was ineffective in failing to properly explain the potential courses of action and their respective chances of success, including an open plea or going to trial.  (DN 64, at PageID # 240.)  The undersigned found that McMahon did discuss these options with Monk and accurately summarized the available options given Monk's violation of the Court's no-contact order.  Again, as McMahon's actions are subject to a highly deferential standard of review, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 3.

### 7.      Ground 23

In Ground 23, Monk argued that McMahon failed to explain that Monk had the option of entering a conditional plea.  (DN 64, at PageID # 265.)  The undersigned found that Monk had not demonstrated prejudice as he had not demonstrated any likelihood that the United States would have acquiesced to the conditional plea as required by the Rule given the United States actively withdrew from plea negotiations after Monk violated the Court's no-contact order.  Given this failure, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 23.

### 8.      Ground 4

In Ground 4, Monk alleged that McMahon failed to advise him of the consequences of a guilty plea, but Monk failed to specifically allege any consequences of the same of which he should

have been advised except for restitution and supervised release.  (DN 64, at PageID # 241.)  The undersigned found that Monk had failed to demonstrate prejudice because Monk had been informed of those consequences by the Court but had entered his guilty plea anyway. Given the facts of this case, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 4.

### 9.      Grounds 13-22, 24

In Grounds 13-22, and 24, Monk alleged that it was ineffective assistance of counsel for McMahon to fail to file motions to suppress based on his warrantless arrest and to suppress his confession based on violations of his Sixth Amendment right to counsel and coercive police activity.  (DN 64, at PageID # 252-64, 266; DN 100, at PageID # 767-70.)  The undersigned found that Monk had failed to demonstrate that his arrest was unlawful and therefore, his claim failed to meet the requirements set forth in *Kimmelman*.  The undersigned also found that Monk failed to demonstrate a violation of his Sixth Amendment right to counsel and that it was not ineffective assistance to refrain from filing a meritless motion.  Finally, the undersigned found that Monk had failed to overcome the presumption of reasonableness applicable to McMahon's conduct regarding the decision not to file a motion to suppress based on coercive police activity and that Monk had not demonstrated prejudice because he had not shown the result of the proceeding would have been different given the other evidence available.  Given the facts of this case and the deferential standard of review applicable to McMahon's strategic decisions, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect. Accordingly, the undersigned recommends that a COA be denied as to Grounds 13-22, 24.

### 10.    Ground 43

In Ground 43, Monk alleged that McMahon failed to object and bring to the Court's attention the fact that Monk did not receive a copy of the PSR until the day of sentencing.  (DN 64, at PageID # 285.)  The undersigned found that Monk failed to demonstrate prejudice because Monk did not specifically identify either the errors in the PSR the additional passage of time would have allowed him to correct or how those errors affected his sentence.  Therefore, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 43.

### 11.    Ground 45

In Ground 45, Monk alleged that McMahon was ineffective in failing to advance a specific argument with respect to the applicability of a sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  (DN 64, at PageID # 287.)  The undersigned found that the argument Monk wanted McMahon to make was baseless, and therefore, counsel could not be ineffective for failing to advance it.  Further, McMahon did make other objections with respect to the enhancement.  Under these circumstances, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 45.

### 12.    Ground 46

In Ground 46, Monk alleged that McMahon was ineffective in failing to obtain a mitigation expert at sentencing.  (DN 64, at PageID # 288.)  The undersigned found that Monk had presented no authority suggesting McMahon had a duty to obtain a mitigation expert in a non-capital case and that McMahon had, himself, investigated mitigating evidence and presented the same at Monk's sentencing.   Therefore, the undersigned concluded, Monk had not demonstrated

McMahon rendered deficient performance.  Again, given the highly deferential standard of review applicable to McMahon's actions, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.  Accordingly, the undersigned recommends that a COA be denied as to Ground 46.

### 13.    Ground 49

In Ground 49, Monk alleged that McMahon was ineffective for failing to object to the imposition of special supervised release conditions specific to those convicted of sex offenses and for failing to object that the Court did not individually determine those same conditions on the record.  (DN 64, at PageID # 291.)  The undersigned found that the Court provided a sufficient rationale during sentencing to support the imposition of the conditions and that the conditions themselves were properly imposed under 18 U.S.C. § 3583(d).  The undersigned concluded that Monk's ineffective assistance claims failed because it was not deficient performance for McMahon to fail to object to proper conditions or to fail to object that the Court had not stated sufficient reasons to impose the same when it had.  The undersigned further found that Monk had not proven prejudice because, given the conditions were properly supported and imposed, Monk had not demonstrated a reasonable probability the results would have been different if McMahon had objected.  Under these circumstances, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect.    Accordingly, the undersigned recommends that a COA be denied as to Ground 49.

### 14.    Ground 51

In Ground 51, Monk argued that McMahon was ineffective because he failed to object when the Court "improperly" awarded restitution.  (DN 64, at PageID # 293-94.)  The undersigned concluded that the Court properly awarded restitution and that Monk was warned the Court could

award restitution prior to entering his guilty plea.  Therefore, the undersigned found that it was not deficient performance for McMahon to fail to object to a proper award of restitution, nor had Monk proved the results would have been different had McMahon objected because the award of restitution was within the Court's discretion.  Given this analysis, the undersigned finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect. Accordingly, the undersigned recommends that a COA be denied as to Ground 51.

### 15.     Grounds 5 and 52

Monk also argued that even if no single error amount to ineffective assistance, cumulatively, the errors amounted to ineffective assistance calling into question the fairness of the proceedings.  (DN 64, at PageID # 242, 295.)  The undersigned rejected these claims because no underlying errors were identified in analyzing Monk's other claims.  The undersigned now finds that reasonable jurists would not find the undersigned's recommendation debatable or incorrect. Accordingly, the undersigned recommends that a COA be denied as to Ground 5 and 52.

## III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Monk's § 2255 Motion (DN 64) be **DENIED**.   The undersigned also recommends that a Certificate of Appealability be **DENIED** as to all claims therein advanced.

June 25, 2019

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record for United States
     Kent Wicker, appointed counsel for evidentiary hearing
     *Pro Se* Movant Marvin Duane Monk

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.   A copy shall forthwith be electronically transmitted or mailed to all parties.   28 U.S.C. § 636(b)(1)(C).   Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2).   Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.   *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).